Mr. Justice. DANIEL,
 

 after having read the statement of the case at the commencement of this report, proceeded to deliver the opinion of the court.
 

 By the statute of Maryland, passed in 1715, cap. 44, § 22, it is enacted, —
 
 “
 
 That all negroes, and other'slaves then imported, and their children, then bom or thereafter to be born, shall be.slaves for life.” Upon examining the legislation of Maryland^ from the period of the law of 1715', a variety of enactments will be seen, showing the policy of this State in the government of her slave population ; and, as entering essentially into that policy, must be considered the several regulations under which she has permitted manumission, either by deed or by will. The enactments here referred to may be found in Kilty’s Laws, vol. 1, session of 1752, cap. 1, where they are collated, by their dates, down to the act of December 31st, 1796, under which last mentioned statute the questions now before this court have immediately arisen. In the interpretation given to these statutes by the tribunals of .the State, one characteristic will impress itself on every mind ; and that is, the strictness with which the laws have been expounded in reference to the power of manumission conferred by them. It seems to have, been thought that very little, or indeed nothing, was permitted by the policy of the State to construction or implication, but that rather the conditions prescribed for the exercise of the power ■ conceded should be fulfilled almost to the letter. Of the propriety of views such as these, on the part of the State, with regard to her own internal policy, no just ground of complaint can be alleged ; but of the reality of those views, a reference to a few of. the adjudications of her. courts will leave no doubt. ,By the Stat. of 1752, cap 1, § 5, manumission was allowed, by writing under bond and seal, “ evidenced by two good witnesses at least.” Under this statute arose the' case of negro James
 
 v.
 
 Gaither, which was a claim to freedom, upon a •writing signed and sealed, but subscribed by a single witness only. Parol proof being offered to establish the fact,. that the deed was executed in the presence of another witness, who did not attest it by subscription, the Court of Appeals ruled such proof to be incompetent and inadmissible under the statute. See 2 Harris and Johnson, 176.
 

 The case of Wicks
 
 v.
 
 Chew et al., 4 Har. & Johns. 543, .a case arising under the statute of 1796, is yet more strongly illustrative of the rule abovementioned. By the statute just referred to, chap. 67, § 29 (Kilty’s; Laws), deeds of manumission are required to be recorded within six months from théir date. By another statute of Maryland, passed in 1785 (Kilty’s. Laws, chap. 72), it is
 
 *79
 
 provided, in the third section thereof, — “ That in case ’any deed hath been or hereafter shall be executed, to the validity ofrwhich deed
 
 recording
 
 is necessary, and such deed hath not been or shall not b.e recorded agreeably to Jaw, without any fraudulent intention of the party claiming under the same, the chancellor, upon petition of. the party to whom the said deed was executed, or of his, her, or their legal representative, or of any of them claiming the land or
 
 other thing
 
 conveyed or intended to be conveyed by such deed, and without the appearance or hearing of the defendant orideferidants, shall. have power to decree the recording of the said deed jn the county or general court- records, within such time from the date- of the decree as it ought originally to have been recorded from the date of the deed giving to the deed, when thus admitted to record, the same effect it would have had if the irregularity thus cured had never occurred. Chew and others, claiming freedom under a; deed from Darnell, against Wicks and others, heirs and devisees of. Darnell, filed their petition with the chancellor, stating that Darnell had died without putting the deed on record within the six months prescribed by law, and praying the chancellor, upon due notice to the heirs and devisees, to decree that the deed be recorded, that thereby validity might he restored to it.- . The chancellor, deeming himself so authorized by the third section of the act of 1785, decreed that the deed be admitted to' record within six months from the date of his decree. The Court of Appeals reversed this decision of the chancellor, and the reasoning of the court conclusively shows the principle on which they place these instruments of manumission,-and on winch they distinguish them from transactions with a-party who is
 
 sui juris.
 
 They declare that the statute of 1785 embraces only cases of mutual but inchoate rights, but still pf rights founded on some valid consideration, such as courts can take notice of and enforce ; that manumission by the laws of. Maryland is a mere gratuity, and until evidenced by all the ácts or requisites the law prescribes, has no legal existence, and can have created no faculty in the contemplated object of that gratuity. The language of the Court- of Appeals is as follows:.— “The acts of assembly referred to (i. e. by the chancellor .in support, of his decree) are not intended to give relief in cases which were before without remedy, but to give an additional remedy by enabling a party, acquiring equitable rights under a deed not operative in law for want of recording,- to perfect those rights, by applying to', the chancellor to order the original instrument to be recorded,-.and thus to give it the effect which by law it would have had if recorded in due time, instead of going into chancery to compel a conveyance, or enforce a specific performance. They are intended»- o give an
 
 accumulative
 
 remedy to persons
 
 able to contract,
 
 and who by deed acquire rights which equity will protect, with the power to-prosecute those rights. But-by the laws of this State, a negro, so long as he is a slave, can have
 
 *80
 
 no rights adverse to those of his master f he can neither sue nor be sued, nor can he make any contract' or acquire any rights under a deed which a court of law or equity can enforce. And as It is the
 
 recording
 
 of a deed of manumission, within the time prescribed by law, which entitles him to his freedom, he continues a slave and can acquire no'rights under such an instrument until it is sore-corded, and consequently cannot go either into a court of law or equity for relief of any kind.” Again) the court say in this case, that— “ A master , may execute and acknowledge a deed of manu.mission, and afterwards destroy it or keep it, and refuse to have it recorded, and the slave remains a slave without redress.” Another striking instance of • the rule of interpretation of their own statutes, adopted by the courts , of Maryland, is found in the case of negro Anna Maria Wright v. Lloyd N. Rogers, reported, in 9 Gill & Johns! 181. In-this .case,- Tilghman, the owner, of the female slave,1" executed and deliv'eréd to her, in 1832, a deed of manumission, which was duly acknowledged but not recorded. Subsequently, Tilghman sold and conveyed the same slave by bill of sale, duly acknowledged and recorded, to
 
 a>
 
 purchaser who had notice at the time of the previous deed of manumission. • This purchaser af-terwards sold the slave to Rogers, to whom, in 1833, he executed and delivered a bill of sale, which was acknowledged and recorded according to law.' The legislature, at their session, December, 1834, passed a special law, authorizing the deed of manumission to be recorded, providing further that the same when recorded should be as valid and effectual for every purpose as if it had been duly recorded according to law. After the deed’, had been recorded pursuant to this law, the negro filed her. petition for freedom ; the judgment of the County Court was against her title, and that judgment was affirmed by the Court of Appeals.
 

 By the 29th section of the statute of 1796 (Kilty’s Laws,1 chap. 67), the power of manumission by writing under seal'was reenacted from previous statutes, enumerated, and repealed in the 31st section of the act of 1896. In the 29th section, many of the conditions contained in the prior laws are prescribed, and amongst these are the requisitions, that the slave to, be emancipated shall be sound in mind and body, and not over 45 years of age'; that the .deed of manumission shall not be in prejudice, of creditors.; that it shall be acknowledged before a magistrate, and entered amongst the records of the County Court where the person or persons granting such freedom shall reside,
 
 within six months from the date of such instrument of writing.
 
 Upon the construction of this section of the act of 17-96 arose the questions presented to the court below, and now brought here for adjudication. These questions are various, as appears by the bill of exceptions;, sealed by. the judges of the Citcuit Court, and by the assignment of, errors upon the record ; but they are all necessarily subordinate to a decision upon the validity of the
 
 *81
 
 instrument of manumission- as affected by the failure to., record it within six months from its date. This omission is admitted in the petition for freedom, and is made out by the proofs «upon which the instruction prayed by the defendant in the court below was asked and refused, and it remains to be. considered how far such omission operated to destroy all foundation, of the right sought to be asserted in this case. This inquiry, as a question of Maryland law, we think is without difficulty. The decisions already quoted, are clear and explicit. They treat the right asserted-and the instrument alleged in evidence thereof as having no legal existence, as nullities to all intents and purposes, and therefore as nothing of which common law or equity can take cognizance, until that right and the pretended evidence of it can be brought forward, attended with every mark and attribute of being, which the statute has called for, and one'of these, as clearly defined as any other, is
 
 admission to record.
 
 This indeed is treated as the great, the capital test of existence,.for it is this which places the transaction definitively beyond the control of the máster, and proclaims, beyond the power of denial, both the intent and its consummation. And why should this not be treated as a question of Maryland law. The statutes of Maryland in being at the cession of the District of Columbia were adopted as the laws of the county of Washington, to be there enforced until altered by authority df Congress, and the rights of person and of property vested or existing un¿er those laws, and all interpretations of those laws by the supreme tribunál of Maryland, became in like manner the rules of right within the same county. This case, too, is one of a right sought to be maintained under a Maryland státute, a right which seeks today its foundation in' the terms of. that statute, and no where else. ' But whilst it is conceded as a general proposition that the laws of Maryland, at the period of the cession of the District of Columbia, are laws of the county of Washington till changed by the authority of Congress, it has been urged- that, in instances in which the Maryland statutes have received no settled interpretation by the Maryland courts, anterior to the cession of this district, the:’ federal courts are free to interpret the provisions of those statutes as they would be to pass upon any other subject of original cognizahce, and would not be bound by decisions of the State courts made posterior to the cession. This position is not deniedit has indeed been sanctioned by this court in the cases of Fenwick
 
 v.
 
 Chapman, 9 Peters,'461, and Wallingsford
 
 v.
 
 Allen, 10.Peters, 583. But admitting this position fully, still we. must also admit that the courts of the United States would feel great respect for the decisions of the State courts upon questions essentially connected with the general internal policy of the State, nay, would yield to those opinions upon matters of doubtful construction, or wherever well ascertained and paramount obligations did not forbid such an acquiescence. But the statute of 1796 was anterior to the cesteion of the District of
 
 *82
 
 Columbia and although the cases of Wicks
 
 v
 
 . Chew et al., 4 Har. & Johns., and of Anna Maria Wright
 
 v.
 
 Rogers, 9 Gill & Johns., were posterior to that event, still these cases cannot be correctly understood as deciding any new. question, .or as introducing any principle not well settled long before it. The case of James
 
 v.
 
 Gaither occurred under the statute of 1752, and upon an instrument of manumission executed in 1784 ; the statute of 1796, too, is a reenactment of provisions of other statutes, going back as far as the year 1752, and the decision in James
 
 v.
 
 Gaither, and in' the subsequent cases, are nothing more than the repeated expositions pf a settled policy or rule of interpretation of the Maryland statutes, viz.- that the conditions prescribed by them must be strictly fulfilled ; that withou* such fulfilment any pretended instrument of manumission must be treated as a nullity, and can impart no rights, can give no standing in court, either at law or in equity. We think then that this is a question of Maryland law, -which has been settled by the courts of Maryland, and should..not now be disturbed ; that in conformity with decisions of those courts, the .recording of the deed of manumission in this case, within the time prescribed by the statute of!796, was an indispensable prerequisite to confer any rights on the petitioners in the court below, or to give them any standing in a court of law or equity; that in. accordance with, this interpretation of the statute, the Circuit CourCshould have given the. instruction asked for by the counsel for the defendants ; that in-refusing to give such instruction that court has-erred, and therefore its decision should be reversed.
 

 In reference to the agreement signed by counsel and annexed to the record in this case, and by which all the powers that a court of equity could properly exert in aid of instruments defectively executed'were' conceded to the Circuit Court as if sitting as a court of equity, we remark that the grounds presented by that agreement are entirely covered by the opinion above expressed of the absolute, nullity of the deed in question, it being no. more within the powers of a court of equity-than it is within those'of a court of law,, to set up'and establish that which is illegal oí wholly void.
 

 Order.
 

 This case cáme on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court,, that the judgment of the. said Circuit Court in this cause be and the same is hereby reversed, with costs, and.that.this cause be and the same is hereby- remanded to the said Circuit Court, with directions to award a
 
 venire facias de'novw