C. P. MILLER v. J. D. PALMER, ADMINISTRATOR, ET AL.

1. CHANCERY. *Relief against judgment at law. When granted.*
   A court of equity will not relieve against a judgment at law unless the defendant can impeach it on grounds of which he could not have availed himself at law, or of which he was prevented from availing himself by fraud, accident, or the act of the opposite party, unmixed with any negligence or fault on his part.

2. SAME. *Showing for relief against a judgment.*
   A defendant to a judgment at law who seeks relief therefrom in a court of chancery must show two facts: first, a good defense; second, a satisfactory excuse for his failure to make such defense.

3. SALE. *By administrator. Failure of purchaser to examine his title.*
   Where a defendant allows judgment *nil dicit* to go against himself for the purchase-money of land bought at an administrator's sale, although the proceedings of sale were invalid, and he might have pleaded a failure of consideration if he had investigated the state of his title, he will not, because of his failure to make such investigation, be regarded as negligent if he, in good faith, relied upon the validity of the proceedings and had no notice of the defects in his title.

4. SAME. *By administrator. Title defective.*

Where the purchaser of land at an administrator's sale, under an order of court, does not get such title as the deceased had and as descended to his heirs, by reason of any defect in the judicial proceedings of the sale, he should not be compelled to pay the purchase-money, unless by his negligence he fails to plead the failure of consideration.

5. SALE. *By administrator. Failure of consideration. Rescission.*

Where the land of an intestate has been sold by the administrator, under an order of court, and judgment *nil dicit* has been recovered against the purchaser for the purchase-money, such judgment may be enjoined several years after its rendition, and the contract of sale rescinded, on the ground of a failure of the consideration, if the judicial proceedings of sale be invalid; but in such case, if the purchaser has been in possession of the land, a court of chancery, having all the parties before it, will restore the possession to the heirs, and will require the purchaser to account to them for the rents and profits.

6. SAME. *Defects in power thereof. When curable.*

Where an administrator's sale of land is void from any irregularity in the judicial proceedings of sale, the court cannot, by a curative decree, have the land resold, and thus cure the defects in the former sale and pass the title to a purchaser. The defective execution of a power given by an individual may be cured, but the defective execution of a power conferred by law cannot be cured.

APPEAL from the Chancery Court of Tippah County.

Hon. A. E. REYNOLDS, Chancellor.

The appellant, on July 20, 1870, filed his bill in chancery for a perpetual injunction against a judgment for $1,510.95, recovered against him by default, on March 11, 1861. The judgment was founded on a note given by Miller for lands purchased by him at a sale made by the appellee *as* administrator of the estate of John L. Walker, deceased. The sale was made in 1860, under an order of the Probate Court. The bill alleges, as a ground of equity, that on account of sundry defects in the proceedings of the Probate Court the sale was void; and that the complainant had no knowledge of such defects at the time of the recovery of the judgment, but they were discovered afterwards, by counsel employed by him to make the examination. The complainant also alleges " that he bought said land upon the faith and belief that the said John D. Palmer had proceeded legally, and had procured all the necessary authority, by lawful and proper proceedings,

authorizing him to convey the legal title of said minors in the same."

The chancellor decreed that the land should be sold by a commissioner, and the proceeds applied to the payment of the judgment; and that, if the proceeds were not sufficient to pay the judgment, the injunction should be dissolved as to the balance, and execution might issue therefor; but if they exceeded the amount of the judgment, the surplus should be paid to Miller, the complainant. From this decree the complainant appealed.

*E. S. Hammond*, for the appellant.

1. The administrator's sale of land was void —

(1.) Because the record does not show affirmatively the insufficiency of personal assets, nor that the minors were without a resident guardian, nor the parties interested in the land. *Heard* v. *Whitehead*, 41 Miss. 404; Rev. Code 1857, p. 446, art. 88; *Galpin* v. *Page*, 18 Wall. 350; *s. c.*, 3 Southern Law Rev. 712; *Root* v. *McFerrin*, 37 Miss. (18 George's Dig. 116, secs. 46 *a*, 46 *b*, *et seq.*); *Wells* v. *Smith*, 44 Miss. 296; *Winston* v. *McLendon*, 43 Miss. 254; *Price* v. *Crone*, 44 Miss. 571.

(2.) Because one of the heirs was not cited at all, and another had no guardian *ad litem;* and, being void as to one, the sale was void as to all. *Hamilton* v. *Lockhart*, 41 Miss. 460; *McAlister* v. *Moye*, 30 Miss. 258. And as the guardian *ad litem* did not accept and defend, there was none for any of the minors. 1 Dan. Ch. Pr., 4th ed., 161, and notes; *McIlvoy* v. *Alsop*, 45 Miss. 374.

(3.) Because the guardian *ad litem* was illegally appointed, there being no previous service of process in the mode prescribed by law — the mother of the minors not being served. *McAlister* v. *Moye, supra* (George's Dig. 619, sec. 63); *Foley* v. *McDonald*, 46 Miss. 238; Code 1857, p. 489, arts. 63, 64; *Robertson* v. *Johnson*, 40 Miss. 503, (George's Dig. 635, sec. 221; *ib.* 417, sec. 22); *Cason* v. *Cason*, 31 Miss. 578; *Wells* v. *Smith*, and *Winston* v. *McLendon, supra* (George's Dig. 619, sec. 63). *Harrington* v. *Wofford*, 46 Miss. 30, and *Saxon* v.

*Ames*, 47 Miss. 567, distinguished, the former being a case of merely defective return of service, and not of total want of service, and the latter applying only to cases where the minors have a regular resident guardian.

(4.) Because the administrator gave no statutory or other bond to properly account for the proceeds. Acts Nov. 30, 1858, ch. 109, p. 187 (George's Dig. 617, sec. 51); *Short* v. *Porter*, 44 Miss. 533.; *Buckner* v. *Wood*, 45 Miss. 57.

(5.) Because the court did not appoint a time to hear the petition. Code 1857, p. 446, art. 89; see *Foley* v. *McDonald*, 46 Miss. 238, 244, and Code 1857, p. 429, art. 22.

2. The judgment at law does not preclude the above defense; but if it did, the objection should have been taken by demurrer, and an answer waives it. *Endicott* v. *Penny*, 14 Smed. & M. 114; and see 1 How. 558. The rule against the interference with judgments is admitted to be most rigid in this state. See *Nevitt* v. *Gillespie*, 1 How. 108; *Green* v. *Robinson*, 5 How. 83; *Glidewell* v. *Hite*, 5 How. 110; *Thomas* v. *Phillips*, 4 Smed. & M. 358. But it is not an absolute rule, and has many exceptions. Relief has been granted in about one-third of all the reported cases: first, where there was fraud, accident, or mistake, without negligence; second, where relief was partial at law, or was concurrent in equity; third, where defendant was blamelessly ignorant of the facts constituting the defense, which is the case at bar. *Webster* v. *Skipwith*, 26 Miss. 349; *Stovall* v. *Northern Bank, etc.*, 5 Smed. & M. 17; *Goad* v. *Hart*, 8 Smed. & M. 787; *Humphries* v. *Bartee*, 10 Smed. & M. 282; *Lapiece* v. *Hughes*, 24 Miss. 69. A purchaser after judgment cannot, in the nature of things, be in worse condition than one after full payment; yet, not only do the courts relieve the latter, by compelling the parties to refund the money, but an act of the Legislature requires it. Acts 1873, p. 41, ch. 24, which is retroactive by its terms. *Short* v. *Porter*, 44 Miss. 533. Equity will not require the useless payment of money which must be refunded. See *Lindsay* v. *Sellars*,

26 Miss. 173. Not even where the rule is strictly *caveat emptor*, will equity permit an unconscionable advantage to be taken of a purchaser. *Pearson* v. *Johnson*, 2 Sneed, 580. In *Puckett* v. *McDonald*, 6 How. 269, *Miller* v. *Gaskins*, Smed. & M. Ch. 524, and *Chrisman* v. *Beasley*, Smed. & M. Ch. 561, will be found direct precedents for the case at bar. All were judgments enjoined for no other reason than blameless ignorance of the defects in probate court sales, except in the last case, as in this one, there were misrepresentations by the administrator. No case can be found denying relief in equity against a void administrator's sale.

3. The failure to inspect the record of the proceedings is not culpable negligence. Read *Hiller* v. *Cotton*, 48 Miss. 605. For the rule as to negligence, see *Younge* v. *Billups*, 23 Miss. 409. Constructive notice of defects in administrator's sales not chargeable on purchaser. 2 Ld. Cas. Eq., 3d ed., 146. Rule stated in *Borell* v. *Dann*, 2 Hare, 440. See, also, 2 Ld. Cas. Eq. 112, 127; 2 Watts, 78; 6 How. 554; 12 Smed. & M. 262. On constructive notice, see Wigram's Rules in *Jones* v. *Smith*, 1 Hare, 55; Ld. Cas. Eq. 99, 114; 26 Miss. 309, 328; 8 N. H. 264. Doctrine of constructive notice not to be extended. 2 Ld. Cas. Eq. 146. Between vendor and vendee, the rule as to constructive notice does not apply. *Parham* v. *Randolph*, 4 How. 451; 6 Yerg. 108. And in *Gordon* v. *Gordon*, 1 Story, 224, a failure to inspect a will was not negligence. Equity often relieves parties acting negligently and ignorantly. Story's Eq., 11th ed., secs. 748, 778.

4. In sales with warranty, no eviction necessary if vendor is *insolvent*. See 5 How. 460; 7 Smed. & M. 727, 744; 13 Smed. & M. 580; 24 Miss. 504. Same rule as to administrators' sales, where there is no warranty at all. See 36 Miss. 178; George's Dig. 746, sec. 154; *ib*. 732, sec. 29; *ib*. 307, sec. 7. No offer to return lands necessary, because neither the possession, rents, nor profits belong to the administrator. *Washington* v. *McCaughan*, 34 Miss. 304; 2 Tuck. Com. 465;

George's Dig. 617, sec. 52; *Campbell* v. *Brown*, 6 How. 106; *ib.* 230; *Planters' Bank* v. *Johnson*, 7 Smed. & M. 449; *Puckett* v. *McDonald*, *supra*, 6 How. 269. *Shipp* v. *Wheeless*, 33 Miss. 646, distinguished; it was a *guardian's* sale, he being entitled to rents and possession. See, also, *Herring* v. *Harris*, 45 Miss. 62, and *Farley* v. *Hord*, 45 Miss. 96.

5. The Chancery Court, as a court of *equity*, has no jurisdiction to make an administrator's sale. It can only be done under the Probate Court statutes. *Wells* v. *Smith*, 44 Miss. 296; *Bernheimer* v. *Calhoun*, 44 Miss. 426; *Saxon* v. *Ames*, 47 Miss. 565. No more can it perfect an administrator's sale. The alternative prayer for it is surplusage, and inconsistent, and, indeed, the heirs are wholly unnecessary parties. 1 Dan. Ch. Pr., 4th Ed., 384, and notes; Story's Eq. Pl., secs. 42, 254.

*Harris & George*, on the same side.

1. It is conceded that the sale conferred no title on Miller, on account of the failure by the administrator and the court to comply with the statute authorizing such sales.

2. It is the established doctrine in this state, in respect to such sales, that while the purchaser takes the risk of the title of the intestate, he does not take the risk of the validity of the proceedings on which the sale rests; and that he is not bound to examine the proceedings; and, should he examine them, he is not responsible for an erroneous judgment respecting their validity, in any contest between him and the administrator touching the payment of the purchase-money.

3. The recognition of a contrary doctrine by the courts would so affect such sales that few persons would be found to bid the value of the land sold.

4. A rule as to diligence, which requires that the purchaser shall investigate the judicial proceeding, and decide as to its validity, at his peril, has never been applied to such sales, and it would be unwise, impolitic, and unjust to apply it. All that can be required of the purchaser is that he shall not

after a discovery or well-grounded suspicion of the invalidity of the proceedings, delay unreasonably his suit to avoid payment.

5. The equity of a purchaser ignorantly purchasing under the void proceeding is not affected by the fact that he has in ignorance suffered a judgment at law to be rendered against him. The case would still present the aspect of injustice in extorting by the representative of the estate the price of land which he has failed to convey, by reason of his own failure to comply with the law — thus getting the price whilst the heir holds the land.

6. The rule of diligence which affects the purchaser with notice of the defects in the proceedings antecedent to the sale is applicable only between the purchaser and parties not connected with the sale, and cannot, with propriety or justice, be applied as between vendor and vendee, and clearly not between the purchaser at a sale under the direction and supervision of a court, which is, in a certain sense, the vendor, in a contest about the purchase-money.

7. The matter of restitution of the land, and of accounting for the rents, has never been considered as affecting the defense of failure of title, or the right to relief against sales of land by the administrator to pay debts ; nor can the court take into view the matter whether the land has increased or diminished in value. The cases in which restitution and account for liens or income have been permitted to influence the decision are cases of sales of personalty by administrators, or sales of land by guardians. In these cases the court has treated the application for relief against the payment of purchase-money as in the nature of applications to rescind, because the right to the possession of the property, the legal title, and the right to the income are in the administrator in the one case, and the guardian in the other ; and the court has in such cases the power to administer full relief, and to adjust the rights between the vendor and vendee. No such power resides in the court, in cases of an abortive attempt to

sell the lands of the heir for payment of debts, and particularly where the heir is a minor. His right both to possession and to the rents is beyond the reach of the court.

8. The court had no power to direct the sale of the land of the minor heirs, and no power to divest their title. The decree is a nullity. The heirs, being minors, were neither necessary or proper parties to the bill, because the court was incompetent to make any decree affecting their title.

9. This is among the reasons why the said sale in such cases renders the forced collection of the purchase-money an act of gross injustice. The purchaser is without remedy. He has no covenants to protect his possession, and he is exposed to the undoubted right in the heir to recover the land, and the rent, and damages for waste; against which the court is powerless to protect or indemnify him.

10. The court below should have granted the relief prayed against the administrator, and it was error to grant any other relief, especially the illusory relief granted.

*E. S. Hammond* and *W. P. Harris*, of counsel for the appellant, argued the case orally.

*Featherston, Harris & Watson,* for the appellees.

1. It is admitted that there were errors and defects in the proceedings of the Probate Court under whose order, made in March, 1860, the land in controversy was sold, but it is submitted that it is now too late for the appellant, who purchased said land, to complain, or to ask relief, on account of the existence of such defects and errors.

2. He acted and purchased at his peril. He has been in the quiet, peaceable, and uninterrupted possession of the land ever since the date of his purchase, and still is, and in the full enjoyment of all of its products for some fifteen years. He failed to inform himself as to the nature of his title to said land in due and proper time. The records of said Probate Court were, as it were, spread out before him at his own door, before and at the time of said sale, and have been ever since; and he is now estopped by his own laches from invoking the

aid of equity to shield him from the consequences of any defect which may exist therein.    If he ever had any remedy against the payment of the note, it was his duty to have interposed it when suit was brought against him by Palmer in the Circuit Court.    The note was not due until twelve months after its date, and Miller not only failed to make or to offer the defense here set up in the suit at bar, but permitted judgment to go against him by default.

It is a principle to which there is no exception, that equity never intervenes where the remedy at law is adequate, nor where a party by the use of ordinary diligence and precaution could have obtained a knowledge of facts, and availed himself of the benefit of the same in a suit at law.    *Semple* et al. v. *McGatagan* et al., 10 Smed. & M. 98; *Williams* v. *Jones*, 10 Smed. & M. 108; *Meek* et al. v. *Howard*, 10 Smed. & M. 502; *Brown* v. *Poindexter*, 10 Smed. & M. 596; *Selser* v. *Ferriday* et al., 13 Smed. & M. 698; *Robb* v. *Halsey* et al., 11 Smed. & M. 140; 8 Smed. & M. 139; 1 Story's Eq., sec. 25; 2 *ib.*, sec. 882.

3. It is also true that where there has been an adjudication of a matter by a court of competent jurisdiction, neither mistakes in law or fact can be corrected by original proceedings. The Circuit Court of Tippah County had full and complete jurisdiction of the subject-matter involved in the controversy between Miller and Palmer, and could have afforded complete relief.    Miller says that he was mistaken as to the contents of the records of the Probate Court — or, in other words, that he was ignorant of any defect in the proceedings upon which the order for the sale of the land was predicated — but at the same time admits that he failed to adopt any of the proper and customary steps to ascertain what really was contained in the record.    A triumphant and complete answer to the appeal of Miller to a court of chancery for the redress of his self-imposed grievances is that the matters complained of by him are fully embraced in, and controlled and governed by, the well-established principles of *res adjudicata*.    His failure and neglect

to employ the customary means to ascertain what defects, if any, existed in the records of said Probate Court, his failure to make any defense to the suit brought at law against him for the purchase-money of said land, coupled with his long acquiescence, have closed the doors of the courts against him, and there is no power which he can invoke which can reopen them and permit him to litigate questions settled by his own conduct. 5 How. 736 ; *Henderson* v. *Herod* et al., 23 Miss. 434 ; *Moody* v. *Harper*, 38 Miss. 599.

4. We assert the rule to be that in all sales made by administrators, executors, or other trustees or fiduciaries, the principle, so far as purchasers are concerned, of *caveat emptor* must be applied in its greatest strictness and rigor.

It becomes the unquestioned duty of all purchasers at such sales to exercise extraordinary diligence and caution for the protection of their own rights.

They are charged with the duty of knowing that an administrator acts under a definite and limited power and authority, plainly marked out and defined by law. . They act at their own peril, and are concluded by their own laches and indifferences. 5 How. 284 ; 10 Smed. & M. 246 ; 12 Smed. & M. 9 ; 4 Cushm. 142 ; 7 Geo. 178 ; 26 Miss. 134 ; 31 Miss. 430 ; 30 Miss. 147, 148 ; 41 Miss. 370, 384 ; 43 Miss. 134, 497, 517, 349 ; 44 Miss. 533 ; 47 Miss. 181, 187, 647 ; 44 Miss. 191 ; 42 Miss. 113.

5. We understand the law to be that, where a contract is rescinded, the parties thereto must be placed as nearly as possible *in statu quo.*

In the case under consideration, the proof shows that the land has greatly depreciated in value through the mismanagement and neglect of Miller.

The dwelling-house, out-houses, gin-house, fences, etc., have been destroyed, or removed from the land and disposed of by Miller, and the land is not now worth, according to the proof, within seventy-five per cent of what it was when Miller bought it. Have the minor children of the dead Walker no

rights which the courts are bound to respect? Are creditors to be altogether ignored, and is the rule to be established that the estates of decedents can be thus frittered away with the sanction of a court of conscience? How can Miller claim the interposition of a court of equity, coming as he does with his hands filled to overflowing with the property of others, which he fails and refuses to account for? He neither can, nor does he offer to, place those interested in the estate of Walker in as good a condition as they were when the land was sold. For fourteen or fifteen years he has been in the use and occupancy of the land, and has derived from it far more than the purchase-money; and if permitted now to avoid the payment of this debt, he will have been allowed to fill his coffers at the expense of Walker's estate.

6. If he had come into a court of equity simply asking that his title to said land might be perfected, he would have entitled himself to its most favorable consideration. We think the chancellor went to the utmost limit of liberality in ordering the land to be resold, and the judgment credited with the proceeds, dissolving the injunction as to the residue. The opinion of the chancellor is entitled to weight and consideration. The question is not, was the decree of the court below clearly right, but was it clearly wrong? 4 Geo. 433; 11 Smed. & M. 455; 45 Miss. 499.

Miller has exercised no sort of prudence or diligence. He neither offers to return the land — ruined and dilapidated as it is, and that, too, the manifest result in a very great degree of his own culpable neglect and mismanagement — nor to account for the rents and profits arising therefrom.

*W. L. Nugent*, on the same side.

Long before the minor heirs at law were served with process, they had lost all right to question the validity of the administrator's sale. Rev. Code 1871, sec. 2173. No desire has ever been expressed for setting aside the sale, and no steps have ever been taken to recover the property. The appellant may, therefore, well be said to have a perfect title, and should be

compelled to pay the purchase-money for which he was sued and the administrator recovered judgment. If the heirs at law had been of full age, and had ratified the sale made by the administrator, it is quite clear the appellant could not now complain of the judgment against him. The heirs at law are, in this case, cut off by limitation, and the same rule should be applied. It is manifestly to the interest of the minors that the previous sale of the land should stand; and, however irregular the proceedings for the sale may have been, it was competent for the court, by its decree, to provide the appellant with a perfect title. *Mahoney* v. *McGee*, 4 Bush, 527; Ex parte *Jewett*, 16 Ala. 409; *Clifford* v. *Clifford*, 1 Desau. 115.

It is a well-recognized law that a court of equity will never interfere in opposition to conscience or good faith, or to remedy the consequences of laches or neglect. *Creath* v. *Sims*, 5 How. 192; *Lewis* v. *Baird*, 3 McLean, 56. Certainly not, unless the party asking equitable relief for himself offers to do equity. *Richardson* v. *Looney*, 7 B. Mon. 571; *Mumford* v. *American Life Ins. Co.*, 4 N. Y. 463; *Finch* v. *Finch*, 10 Ohio St. 501; *Ansley* v. *Wilson*, 50 Ga. 418; 37 Iowa, 300. The appellant here had bought the land of appellees' ancestor, at the administrator's sale, and agreed to pay a fair price for it; he had occupied, used, and cultivated it until it was not worth one-half what he had agreed to pay; the timber upon it had been used; fencing and running-gear disposed of, and houses all destroyed. When the final decree of the Chancery Court was rendered, it was not worth $300. Manifestly, after the appellant had permitted judgment to go against him on his note for the purchase-money, he could ask nothing unless he offered to restore possession, account for rents and profits, and for the waste committed by him upon the property.

The appellant had full opportunity to make his defense at law, and, neglecting to do so, the facts alleged in his bill are insufficient to take his case out of the operation of the rule adverse to relief in such case. The appellant does not allege or prove that he was prevented from availing himself of his

defense by accident, or the fraud of the appellees, unmixed with any fault or negligence of himself or agent. *Robinson* v. *Wheeler*, 51 N. H. 384 ; *Craft* v. *Thompson*, N. H. 536 ; *Holland* v. *Trotter*, 22 Gratt. 136 ; *Smith* v. *Allen*, 63 Ill. 474 ; 24 Gratt. 548.

*W. S. Featherston* and *W. L. Nugent*, of counsel for the appellees, argued the case orally.

SIMRALL, C. J., delivered the opinion of the court.

When will a court of equity relieve against a judgment at law? A party will not be aided after trial at law unless he can impeach the justice of the verdict on grounds of which he could not have availed himself at law, or was prevented from doing so by fraud, accident, or the act of the opposite party, unmixed with negligence or fault on his part. *Insurance Co.* v. *Hodgson*, 7 Cranch, 336 ; *Smith* v. *McIver*, 9 Wheat. 532 ; *Le Guin* v. *Governor & Kimble*, 1 Johns. Cas. 491.

One of the most elaborate cases in our books on this subject is *Green* v. *Robinson*, 5 How. 104. The principle stated is that, if the matter was capable of discussion and adjudication in a court of law, it is not enough to show merely that the verdict works a hardship, but that the party could not then have made his defense. The rule is the same where the jurisdiction is concurrent. In such cases the defense must be made in the court that first acquires jurisdiction. That principle was declared by the Supreme Court of the United States in *Smith* v. *McIver*, *ubi supra* — that in all cases of concurrent jurisdiction "the court which first has possession of the subject must decide."

If the Chancery Court should afterwards intervene, it would, in reality, exercise indirectly a power of review of the trial at law. That jurisdiction directly would be repudiated. The intervention is confined to cases where the subject which is the ground of relief in chancery was not discussed and adjudicated at all in the court of law, either from fraud in the

opposite party or from accident, surprise, or ignorance, without the negligence or fault of the complainant. It is not sufficient that the complainant did not know his defense; it must appear that he could not have obtained such information by the use of ordinary diligence. *Miller* v. *Gaskins*, Smed. & M. Ch. 525.

The jurisdiction rests on the ground, not merely that the defense was good, but that it was not known to the party at the trial, and that negligence and laches are not imputable to him. The settled doctrine in this state is that, if the defense could have been made at law (although a court of equity had concurrent jurisdiction), and was not made, the complainant must show two facts; first, that the defense is good and ought to have been successful; and, secondly, the failure to make it must be satisfactorily explained. *Hiller & Co.* v. *Cotton & Co.*, 48 Miss. 602, and cases there cited. Of course, if the defense were purely equitable, the trial at law would have no prejudicial effect in the equity suit.

The case closest in analogy to the one before us is *Shipp* v. *Wheeless*, 33 Miss. 650. The allegations were that the guardian's sale was illegal and void, and complainant acquired no title. The prayer was for relief against a judgment on one of the notes. Among other reasons, the relief was denied because the grounds alleged constituted a valid defense at law; "and there is no showing whatever, nor an attempt at showing, that the appellant could not have availed himself of that defense at the trial."

The sale to Miller was made May 26, 1860, and confirmed at the next June term. Judgments by *nil dicit* was rendered in 1861, with a stay of execution for six months. When execution was issued, Miller moved to quash, and prosecuted unsuccessfully a writ of error to the decision of the court overruling that motion. After a levy on his property, and an impending sale in 1870, he filed this bill. He had been in possession for ten years, during which time, from bad husbandry and other causes, such waste has been committed or suffered in the decay

of buildings, destruction and removal of fences, cutting down timber; that the property has greatly depreciated in value. Some witness estimated the value at one-tenth of the price at which Miller bid it off.

The excuse for not defending at law is contained in this allegation of the bill:  "Having full faith and belief in the lawfulness and validity of said sale, he made no defense in said suit, but allowed judgment by default; that since said judgment he has employed lawyers to examine into the validity of said title, and upon their advice he states said sale was and is invalid," etc.   The bill is not specific as to the time when the discovery was made, except that it was *after* the judgment was rendered; but how long afterwards is left to conjecture.

Within what period of time (if, indeed, there be any definite limit) the purchaser of a decedent's real estate must prefer his objection to the title, as ground of relief from payment of the purchase-money, has not been determined in this state, that we are aware of.   He is not chargeable with knowledge or notice of defects in the judicial proceedings which would avoid the sale.   If that were so, he would accept the deed at his peril.   It has been settled that he may plead that defense to an action on his note or bond, whether that action be brought one, two, or five years after the sale.   It has also been settled that if he had knowledge of such defects before or at the trial at law, so that he might have relied upon them to defeat a recovery of the purchase-money, he is precluded from relief in equity.   An action at law is suggestive that if he has reason why he should not pay the money, he should then urge it, or afterwards hold his peace; whether it would be wise and just to go further, and declare that he must then examine into his title, and if he fails to do so he is negligent, and will not afterwards be heard to complain of fatal defects, is a doctrine that has support in our books, as respects sales of personal property.   Quite all of the cases were where slaves had been sold, and the defense was not made until after their emancipation.   The loss of the property was not referable to

55 MISS. — 22

defective title, but to a great event in our history, *ex post facto* the sale, their emancipation. It was not possible to make restoration.

We are not willing to announce the doctrine that the sale of a decedent's property, real or personal, must be regarded with suspicion and doubt, and that purchasers are put on prompt inquiry to investigate the judicial proceedings. The wiser rule is to encourage confidence in titles thus devolved, so that property may bring its full value. As to the title of the testate or intestate, purchasers take the risk. As to that, the principle of *caveat emptor* applies. But the purchaser is not under the operation of that principle, as to the sufficiency and validity of the judicial proceedings, to divest the title of the devisee or heir. It is incumbent on the executor or administrator to see to that. The consideration paid, or agreed to be paid, is a transfer, by valid proceedings, and sale, to the purchaser the title as it went to the devisee or heir. There is no warranty that such title is good; there is no protection of covenants which are assumed to be a sufficient indemnity, as in ordinary bargains and sales between individuals. *Cozan* v. *Frisby*, 36 Miss. 184, 185 ; *Ware* v. *Houghton*, 41 Miss. 381 ; *George* v. *Bean* et al., 30 Miss. 150.

Hence the purchaser, without eviction, may defend against the purchase-money, or may proceed to annul the sale. *Laughman* v. *Thompson*, 6 Smed. & M. 269 ; *Puckett* v. *McDonald*, 6 How. 273. But if he knew of the defects, and failed to plead or rely upon them at law, he will be precluded from relief in chancery unless he can attribute such failure or omission to the fraud or contrivance of his adversary, or his ignorance of it. *Nevitt* v. *Gillespie*, 1 How. 108 ; *Green* v. *Robinson*, 5 How. 80 ; *Smith* v. *Walker*, 8 Smed. & M. 131.

The bill, in its main aspect, is for a rescission of the sale — not technically so, but the relief sought is substantially of that sort. It is predicated of those allegations which discover the failure to pursue the directions of the statute, so as to acquire jurisdiction over the subject and the parties ; the result

being, the administrator did not obtain the authority of the law to sell the property and transfer the title. If the deed did not transmit to Miller the title which was in the intestate, and which descended to his heirs, there has been a failure of consideration, and the purchase-money ought not to be collected. A decree of perpetual injunction is a dissolution of the *apparent* contract of sale between the administrator and Miller. Such decree would absolve him from the debt, and would be complete relief so far as the administrator was concerned. But if nothing more were, or could be, done in the suit, Miller would be left in possession of the land, and in the enjoyment of its revenue. Plainly, the equity of the heirs to a restoration of the land and an account is as strong as his equity to be discharged from the judgment; and when the situation of the suit, as to parties, will admit of it, complete justice should be done by the decree.

In *Shipp* v. *Wheeless, ubi supra,* the court manifestly regarded that to be the scope and object of the bill in that case. It is stated that for the failure in the consideration of the bonds (for the purchase-money) the guardian ought to be restrained from collecting the judgment on one of them, and the two outstanding bonds; and it is added: " It is clear that this ought not to be done unless the sale also should be declared void and set aside, and the parties placed *in statu quo,* by a restoration of possession of the wards' land to the guardian, and an account for the rents, etc., during appellant's possession of the same." The bill was held to be fatally defective for an omission of an offer so to do.

In such case there would be no embarrassment in the administration of that relief. The guardian would be entitled, on a rescission, to possession of the land; and he is the proper person with whom the purchaser ought to account for the rents and profits. It is plain equity that a purchaser who has enjoyed an estate for several years, under a probate sale, ought not, in a court of chancery, to be discharged from the payment

of the money, unless he restores the possession and pays for the use of the land.

But it is said, where the sale has been made by an administrator, the only question that can be litigated in a court of equity is between the debtor and creditor, precisely as it might have been in an action at law on the obligation for the price. It is argued by counsel that the heirs of the intestate are not necessary or proper parties to a bill brought by the purchaser to be relieved from payment of the money. As to that, the only proper parties are the purchaser (the debtor) and the administrator.

The maxim that he who seeks equity must himself do equity is as old as chancery jurisdiction; and, that it may be fully accomplished, that court may bring before it all parties interested, so that their rights may be protected. A court of law, proceeding according to inflexible rules and formulas, respects nothing but legal rights and titles. Hence it adjudges, in the action on the bond or note, if the sale was void, the consideration has failed, or there never was one, and acquits from the debt. It has no means by which to settle the equities between parties, consequent on that decision. It, therefore, has no concern with them, but turns the parties over to another tribunal.

But if the purchaser, in ignorance of his defense, has suffered a judgment to go against him at law, and brings his plaint into a court of chancery for relief because the sale was void, why may not the chancellor do complete justice to all concerned — release the purchaser from the debt, restore the land to the heirs, and compel him to account for the rents and profits? Are not these subjects so associated and mutually dependent that they may be discussed and adjudicated in one suit? The predicate of it is that the judicial proceedings terminating in the sale were utterly abortive — nothing has been accomplished by them. It follows from that, that inasmuch as the relations of parties to the property have been

:seriously changed, because of the assumption that all things had been rightfully done, the condition of the *statu quo* should, .as far as may be, be restored. That is precisely the course pur:sued when a contract of sale between A and B is adjudged void. It is the essential condition of rescission, where a guardian has sold under judicial license; and the suggestion of reason and .justice are equally cogent that it should be pursued where the administrator is the vendor. ·

Is there anything in the constitution of a court of chancery, ·or in its methods of pleading and relief, which compels it to release the purchaser from payment of a judgment for the ·purchase-money, and stops there? If the heirs, as in this ·case, are before the court, what hinders an adjustment of the equities between them and the purchaser at the same time that it gives effect to his equity against the administrator? ·One is the natural and legal consequence of the other. If the purchaser is released of the debt, it follows that the land must be surrendered, and its use accounted for. The rescis:sion puts the rights of the heirs in the same category they were before the sale: in effect, they are declared to have been ·owners during all the time of the purchaser's possession, having the right to compensation for the use and occupation. They have the right to immediate occupation of their inheritance. The restoration is to them, and not to the administrator.

A contingency arose in the affairs of the estate when it became the duty of the administrator to treat the lands as assets for creditors. In such case he may be armed with power over the title, by judicial decree, to transfer it to a purchaser. In this case the proceedings and decree of the Probate Court did not confer power to sell and pass the title. But this deed conferred color of title, under which Miller entered, and enjoyed the estate for ten years. The administrator represents the creditors on whose behalf he made the sale, in respect of the obligations for the purchase-money. The heirs represent the title and the claim for rents and profits.

These parties, administrator and heirs, are concerned and interested in the subject of this suit, and in any relief, full, adequate, and complete, that would compose all the interests involved.

The essential idea implied in a rescission is that the money paid shall be refunded, or, if the obligations for it are outstanding, that they shall be surrendered and canceled; and, on the other side, that the vendee shall return the possession, and compensate the vendor for the use. It is plain and easy to work out that result in a transaction between A and B, both having acted *sui juris*. It is a little more involved where the guardian is the vendor, since he acted in *autre droit*. But the guardian no more than an administrator has title by virtue of his office; when either sells, it is by force of the decree of a competent court. The subject becomes more involved when the administrator sells; he does not have possession, nor the right of possession, like the guardian, nor has he a right to the profits. When his sale is annulled, he could be compelled to return the money, or surrender the notes or bonds given for it. The other redress, to make it perfect and complete, must be meted out to the heirs by restoring the property, which is theirs, and accounting to them for rents and profits.

It would not be doubted that if Miller had defeated a recovery on his bond for the price, that a court of equity would have entertained a bill by the heirs for an account of the profits. The purchaser need not wait for an action to recover the purchase price. But he may himself take the initiative, and claim a rescission because the sale was void and he got no title. But a court of equity might well pause before it would separate the equities of the several parties interested, and in one suit, for the relief of the purchaser, enjoin the administrator from the collection of the money, and in another suit compel the purchaser to do justice to the heirs. It would unite these several parties in one contestation, and eliminate the rights and redress appropriate to each.

The chancellor, in that part of the decree ordering a resale of the land, went on the idea that the probate sale did not pass the title, but that it would be divested by the decree and resale, and vest in a purchaser. The court overlooked the distinction between the defective execution of a power given by a party and the defective execution of a power given by the law. In the former, irregularities may be cured; not so in the latter. 1 Story's Eq., sec. 96; 1 Story, 487.

The law empowers the administrator, by apt judicial proceedings, to obtain authority by sale to transfer the title. Such power is derived from the decree. It does not arise out of contract, or the license or consent of the owner. If the directions of the law have not been pursued, the power has not been conferred at all; and the chancellor cannot supply omissions or irregularities by a curative decree and sale. Of that character is the decree, and for that object the sale was directed to be made.

It is well settled that the purchaser of personal property must return, or offer to return, it, as a condition of defense at law against the purchase-money. He is not required to make that offer in the case of real estate, because the administrator has no right to the possession. In *Williamson* et ux. v. *Williamson*, 3 Smed. & M. 749, the heirs succeeded in setting aside a sale made under a private act of the Legislature. The purchaser was held to an account for the rents. *Davis* v. *Heard*, 44 Miss. 60, illustrates a corresponding equity in behalf of a vendee who has procured the rescission of a contract on account of the default of the vendor. He has an equitable lien on the land for reimbursement of the money advanced. When the vendee resorts to a court of equity for redress, he submits himself to such equitable conditions as connect themselves with the subject.

Miller has made the infant heirs of the intestate defendants. Infants stand before the court of equity on a different footing, in many particulars, from adults. The guardian *ad litem* submits, in the formal answer, their interests to the favorable consideration and protection of the court. Nothing can either

be admitted or waived that would be to their prejudice.   The chancellor will apply for their benefit whatever defense arises on the record, without formal preferment in pleading.   *Price* v. *Crone*, 44 Miss. 577, and cases there cited.

No sound reason is perceived why Miller, in obtaining relief against the judgment, should not be put on the terms of doing equity to these infants.   Their right to be restored to the possession of the land, and to an account, arises out of the same condition of facts which manifest his claim to relief.   His averments disclosing an equity in his own behalf bring distinctly to light their equally strong equity.

We think, therefore, the justice of the case requires that, when the case returns to the Chancery Court, there ought to be a perpetual injunction of the judgment against Miller, a restoration of the possession of the land to the heirs, and an account between them and Miller.   This may be done on the present state of the pleadings, or by cross-bill.

Decree reversed and cause remanded for further proceedings.