## G. E. WILSON v. TOWN OF HANDSBORO.

[54 South. 845.]

1. CRIMINAL LAW. *Correction of judgment. Code* 1906, *section* 1016.

Section 1016, Code 1906, providing for correction of errors in judgments applies only to civil not to criminal cases.

2. SAME.

This section refers alone to corrections of mistakes in "miscalculation or misrecital of any sum of money or quantity of anything, or any name" and is not applicable to case where the effort is to entirely change the judgment incorrectly entered on the minutes by the misprision of the clerk, to a totally different judgment which had been actually rendered by the court. The power to do this is not derivable, either in civil or criminal cases from this section.

3. JUDGMENT. *Power to correct.*

Power to correct a judgment rendered at a former term, not in some clerical matter merely, as to name or amount, but so as to strike out a judgment erroneously entered by mistake of the clerk, and substitute for it the wholly different judgment actually rendered by the court is a power inherent in every court of record and not derived from any statute.

4. JUDGMENT. *Correction. Evidence.*

On a motion to correct an erroneously entered judgment, any evidence of parol, or other kind, is competent, which throws material light on the truth of the matter, but where there is nothing but mere parol evidence, such evidence should be very carefully and closely scrutinized.

APPEAL from the circuit court of Harrison county.

HON. T. H. BARRETT, Judge.

G. E. Wilson was convicted of failing to work the streets of the town of Handsboro and appeals.

This is an appeal from a conviction for the failure to work the streets of a municipality. The case on former appeal is reported in 50 South. 982. It is contended on this appeal that the court below should have sustained

the motion to discharge defendant, because no replication had been filed to the plea of former jeopardy. The record shows that there was a demurrer introduced to this plea, which the court sustained at a former term, but the judgment, through some error, showed that the demurrer was overruled, and that at a subsequent term of the court an order was entered correcting the erroneous judgment. With this demurrer stricken out, the case then proceeded to trial on its merits, resulting in a conviction, from which an appeal is taken. Among other errors assigned, there is presented for review the question of the authority of the court at a subsequent term to correct an error in a judgment entered at a former term.

*E. M. Barber,* for appellant.

My contention being that the court at a subsequent term had no authority to change the minutes of a former term wherein the demurrer had been overruled and making an order sustaining same.

"A plea of former jeopardy" is a "plea in bar" and the demurrer, of course, confessed the facts set up in the "plea in bar," and when the minutes of the court showed that the demurrer had been overruled, at the expiration of that term of the court, that was a final judgment in behalf of defendant. George's Digest 585, Demurrer to Plea; *Bailey* v. *Gaskins,* 6 H. 519; *Lang* v. *Fatheree,* 7 S. & M. 404; *Shields* v. *Taylor,* 13 S. & M. 127; *Hardin* v. *Pelam,* 41 M. 112.

*Jas. R. McDowell,* assistant attorney-general, for appellee.

It is contended that the court should have sustained the motion to discharge the defendant because no replication had been filed to the plea of former jeopardy. As a matter of fact, there was a demurrer introduced to this plea which the court sustained at a former term, but

the judgment through some error showed that the demurrer was overruled. At the next term, the court entered a judgment correcting the error. Counsel contends that the court is without authority at a subsequent term to correct such an error in such a judgment. On the former trial, this point was not determined by the court and is raised now in this trial. This not being a final judgment, can be corrected at a subsequent term.

By reference to 17 Am. and Eng. Ency. Law, 2d Ed., p. 816, your honors will see that the rule is that, after the expiration of the term, the court is without power to amend a judgment in any matter of substance or relating to the merits of the cause.

"GENERAL RULE: It is a power inherent in the authority of every court having general jurisdiction, to correct errors in the making up of records, whereby they fail to express the truth in regard to its proceedings, and this power can be exercised by the court at any time when an error is brought to its attention, when no injury is likely to result to the parties or other persons by its exercise. Therefore the court may at any time, even after the expiration of the term at which a judgment was entered, correct or amend the entry thereof so as to make it conform to the judgment which the court actually rendered."

Here the judgment failed to express the truth in regard to the proceedings and, of course an error could be corrected. No court would permit the error to stand in the record if it militated against the defendant. Then why should the defendant ask to take advantage of this error. His rights could not be affected by the correction, and the state is entitled to have the record express the truth.

Our own court in *Le Blanc v. I. V. Railroad Co.*, 73 Miss. 463, has so expressly held; and I deem it unnecessary to prolong the argument on this point. This point is fully covered in the admirable brief of Hon.

George Butler in case No. 13883, to which I refer the court.

WHITFIELD, C.

The effort here is to have the court correct a judgment rendered at a former term, which judgment recited that the demurrer to a plea of former jeopardy had been over-ruled, by showing that in truth and in fact the demurrer had been sustained, and that the mis-entry was due solely to a clerical omission by the clerk. In other words, the effort is to make the record speak the truth, to recite the judgment which the court actually rendered, instead of a judgment the direct opposite of the one which the court had actually rendered.

This is a criminal case. Consequently section 1016 of the Code of 1906, which is section 940 of the Code of 1892, has no application. See McCarthy v. State, 56 Miss. 294. Some of the earlier authorities in this state on power of the court to correct a judgment rendered at a former term, so as to make it speak the truth, are collected in this case. All of them may be found set out in note 1 at page 99 of the first volume of Freeman on Judgments. It is undoubtedly true that these earlier authorities hold that no such correction could be made, even by resort to memoranda made by the judge. This was found to be entirely too harsh a rule, and so in the progress of our jurisprudence section 940 of the Code of 1892 was passed, which expressly provided that ''such correction could be made by the docket or other memo randa by the judge or chancellor.'' This clause of said section 940 was intended to change, and, of course, did effectually change, the rule that the docket or memo-randa of the judge could not be used as the evidence whereby to make such correction. But this section 940 of the Code of 1892 (section 1016 of the Code of 1906) relates only to civil cases.

Another most important observation is due to be made just here, and that is that section 1016 refers alone to corrections of mistakes in "miscalculation, or misrecital of any sum of money or quantity of anything, or of any name," and that such section is not applicable, consequently, to a case where the effort is to entirely change the judgment, incorrectly entered on the minutes by the misprision of the clerk, to a totally different judgment, which had been actually rendered by the court. Wherever the effort is to do this latter thing, to change entirely a judgment from the one entered on the minutes by the mistake of the clerk to one wholly different actually rendered by the court, the power to do so is not derivable, either in civil or criminal cases, from said section 1016, or from any other statutory enactment, but is a power inherent in all courts of record. Says Mr. Freeman in section 71, vol. 1, on Judgments: "All courts have inherent power to correct clerical errors at any time, and to make the judgment entry correspond with the judgment rendered. This power exists in criminal prosecutions as well as in civil cases." And again he says: "In whatever respect the clerk may have erred in entering judgment, the court may, on proper evidence, nullify the error by making the judgment entry fully and correctly express the judgment rendered." And he cites, among other cases, the case of *Morrison* v. *Stewart,* 21 Ill. App. 113, where the judgment was changed from a judgment for the plaintiff to a judgment for the defendant. Says Mr. Black, in his work on Judgments (section 161): "This power, being inherent, belongs to a court merely as such, and does not depend upon a statutory grant of jurisdiction." In the case of *King* v. *State Bank,* 9 Ark. 188, 47 Am. Dec. 739, the court says: ".As to the power of the court below to allow the amendment in question, there can be no doubt at all. The authority of the court, in such cases, does not arise from the statute of amendments, and jeofails, although this

statute controls in cases of amendment after writ of error brought, but from the high equity powers of the court, which enable it to amend in whatever may be necessary to make the record speak the truth, whenever the ends of justice require such amendment." See *Hart* v. *Reynolds,* referred to in *Chichester* v. *Cande,* 3 Cow. (N. Y.) 44, 15 Am. Dec. 238.

In *Mars* v. *Quin,* 6 Term R. 8, Lord Kenyon, C. J., says: "The forms of the court are always best used when they are made subservient to the justice of the case." And Ashhurst, J., observed: "It is admitted that amendments have been made at all times in order to forward the justice of the case." In that case the court put the judgment *forti manu* two years back to prevent injustice, because it could not injure third persons. In *King* v. *Mayor of Grampond,* 7 Term R. 699, Lord Kenyon says: "I wish that that could be attained that Lord Hardwicke, in the case before him, lamented could not be done, namely that these amendments were reduced to certain rules; but, there being no such rules, each particular case must be left to the sound judgment of the court. And the best principle seems to be that on which Lord Hardwicke relied in that case, that an amendment shall or shall not be permitted to be made as it will best tend to the furtherance of justice. Amendments of this kind are not made under the statute of jeofails, but under the general authority of the court."

We think it is perfectly clear that this power, with which we are dealing, the one to correct a judgment rendered at a former term, not in some clerical matter merely, as to name or amount, but so as to strike out a judgment erroneously entered by mistake of the clerk, and substitute for it the wholly different judgment actually rendered by the court, is a power inherent in every court of record, and not derived from any statute. There seems, indeed, to be no controversy as to the right to exercise this power. In this state, in the case of *Forbes* v.

*Navra,* 63 Miss. 1, it is distinctly upheld, citing *Cotten*
v. *McGehee,* 54 Miss. 622, and Freeman on Judgments,
§ 71.   The case of *Cotten* v. *McGehee* is our leading case
on the subject, where the matter seems to have been fully
considered, and in the last announcement by this court
on this subject, in *Powers* v. *State,* 83 Miss. 697, 698, 36
South. 6, the doctrine is distinctly announced in a pre-
cisely analogous case to the one at bar.   That was an
indictment for murder, and the case had been reversed
and remanded by this court, and after the remanding of
the case the defendant filed a special plea of former
jeopardy, just as was done here, and that plea was act-
ually overruled at the term at which it was presented,
but by oversight no order was placed on the minutes of·
that term showing the disposition of the plea.   The court
allowed an order to be then placed upon the minutes
showing the disposition of the plea as made at the pre-
vious term, and this court said that was correct.

The very best and clearest authority we have seen upon
this subject is the case of *Frink* v. *Frink,* 43 N. H. 508,
80 Am. Dec. 190, 191.   In that case the court said:

"Every court exercising a continuing jurisdiction, hav-
ing an office for the preservation of its records, and the
charge of those records by a proper officer, has by law
an implied authority to amend its records, to make them
conform to the facts and truth of the case.   *Remick* v.
*Butterfield,* 31 N. H. 70, 64 Am. Dec. 316; *Dudley* v. *But-
ler,* 10 N. H. 284; *Willard* v. *Harvey,* 24 N. H. 344; *Clag-
gett* v. *Simes,* 31 N. H. 23.   Or, as the same doctrine is
well expressed by Fletcher, J., in *Balch* v. *Shaw,* 7 Cush.
(Mass.) 284, there can be no doubt that it is competent
for a court of record, under its general inherent and
necessary authority, to correct the mistakes and supply
the defects of its clerk or recording officer, so as to have
the record conform to the actual facts and truth of the
case.   And this may be done at any time, as well after
as during the term.   The length of time in this case

(12 years) between the granting of the license and the making up of the record does not take away the right or jurisdiction of the court. *S. P. Fay* v. *Wenzell,* 8 Cush. (Mass.) 317; *In re Limerick, Petr.,* 18 Me. 186; *Lothrop* v. *Page,* 26 Me. 121; *Woodcock* v. *Parker,* 35 Me. 138; *Lewis* v. *Ross,* 37 Me. 234, 59 Am. Dec. 49; *Weed* v. *Weed,* 25 Conn. 337; *Chichester* v. *Cande,* 3 Cow. (N. Y.) 39, 15 Am. Dec. 238; *Hunt* v. *Grant,* 19 Wend. (N. Y.) 90. This authority not only extends to the correction of clerical errors, but to the restoration of papers which have been improperly altered or defaced, and the substitution of new ones where the originals are purloined or lost. *Douglas* v. *Yallop,* 2 Burr. 722; *Hollister* v. *Judges,* 8 Ohio St. 201, 70 Am. Dec. 100.

"It is contended, and so are some of the authorities, that an amendment of a record cannot be made unless there is something to amend by, by which is understood something upon the files or records of the court. *Wendell* v. *Mugridge,* 19 N. H. 112; *Atkins* v. *Sawyer,* 1 Pick. (Mass.) 354, 11 Am. Dec. 188; *Grenvile* v. *Smith,* Cro. Jac. 628; *Mason* v. *Fox,* Cro. Jac. 632. But in other cases such amendments have been made according to the minutes of the judge. *Coughran* v. *Gutcheus,* 18 Ill. 390; *Brady* v. *Little,* 21 Ga. 132; *Petrie* v. *Hannay,* 3 Term R. 659; 1 Tidd's Pr. 661; *Newcombe* v. *Green,* 1 Wils. 33, 2 Str. 1197; *Eddowes* v. *Hopkins,* 1 Doug. 376; *Tarlton* v. *Fisher,* 2 Doug. 672. Here we have the minutes of the judge, and counsel entirely clear upon the point. But we think it clear, upon the authorities, that the court may make such amendments upon any competent legal evidence, and that they are the proper judges as to the amount and kind of evidence requisite in each case to satisfy them what was the real order of the court, or the actual proceeding before it—what was the proper entry to be made on the docket, and how the record should be extended. *Fay* v. *Wenzell,* 8 Cush. (Mass.) 317; *Balch* v. *Shaw,* 7 Cush. (Mass.) 284; *In re Limerick, Petr.,* 18

Me. 186; *Weed* v. *Weed,* 25 Conn. 337; *Hollister* v. *Judges,* 8 Ohio St. 201, 70 Am. Dec. 100, before cited. Where there is nothing more to rely on than mere memory, the court will act, if at all, with great caution. *Porter* v. *Vaughan,* 22 Vt. 273; *Coughran* v. *Gutcheus,* 18 Ill. 390.''

See, also, Freeman on Judgments, vol. 1, §§ 70, 71; Black on Judgments, vol. 1, §§ 161, 165. See, also, 30 Century Digest, Judgment, § 623. These authorities certainly settle beyond controversy the power of the court at a subsequent term to so correct a judgment, entered by mistake of the clerk at a former term incorrectly, as to make it speak the truth, by then entering up the true judgment actually entered at the former term by the court.

The remaining question is, simply, What evidence is it competent for the court to hear on such motion? As stated, in the earlier decisions of this court, referred to *supra,* most of which, however, were in civil cases, it was held that no parol evidence, nor any evidence, except record evidence, was competent. But in the Navra case, just cited, and in *Cotten* v. *McGehee* and in *Powers* v. *State,* this rule was manifestly departed from. In the Navra case, there was no evidence at all; but the court acted upon the presumption that the judge had directed the proper judgment to be entered. In *Powers* v. *State,* it is said that the court advised itself in the premises. We cannot conceive how it did so, except by parol proof. The United States Supreme Court, in *Murphy, Administrator,* v. *Stewart, Administrator,* 2 How. 263, 11 L. Ed. 261, like the *New Hampshire case, supra,* deals fully with the matter, and holds parol proof competent, citing many authorities. Mr Freeman, in concluding his review of the matter (volume 1 on Judgments), speaks thus: ''The law in relation to amendments, as stated by Lord Coke, and as it undoubtedly existed until long after his time, was too harsh to successfully resist the march of legal

reform, even in conservative England. As modified in that country, it is still' too inconsistent with a liberal administration of the law to escape total overthrow in this country. The proposition that 'the power to amend a record' is confined to cases where the record discloses that the entry 'does not correctly give what was the judgment of the court' implies that ministerial authority is more sacred than judicial authority. This proposition is sustained by the averment that a record is of 'uncontrollable verity.' This verity is sufficiently respected when it is allowed to protect records from collateral assault. It is unduly indulged if it operate to the exclusion of truth, in every form and on every occasion. The object in every litigation is to obtain from some court a final determination of the rights of the parties. That determination is invariably what the judges direct, and not invariably what the clerks record. The power of the court to make the record express the judgment of the court with the utmost accuracy ought not to be restricted."

Black on Judgments, vol. 1, § 165, speaks to this point as follows: "The rule that 'a record can only be amended by matter of record' seems to rest, in the last analysis, upon the rule that 'a record imports absolute verity.' Without losing sight of the extreme importance of securing stability and authority to the solemn memorials of the courts, we may still conceive that this rule, if applied with full vigor and severity, might in many cases produce the greatest hardship and injustice. But it is evident to a student of American case law that we are gradually working away from the old standards in this respect. The courts are more and more disposed to a liberal practice, and to look to the full and perfect administration of justice, rather than to buttress up the sanctity of records by forbidding inquiry into their truth. Hence it is not improbable that the policy of permitting judgments to be amended upon cause shown by any

proper and satisfactory evidence will ultimately prevail. Certainly it is a policy that is commended by reason and justice, and still more by the loose way in which the records of our courts are but too frequently made up. To shut out any light which could help to make the records accurate, complete, and right in themselves appears to show a too superstitious reverence for the *litera scripta.*"

Authorities could be multiplied indefinitely in support of this view. We are convinced, from a full and careful consideration of all the authorities, that the true view is the one stated by the supreme court of New Hampshire in *Frink* v. *Frink, supra,* and that, so far as competency of the evidence is concerned, any evidence of parol or other kind is competent, which throws material light on the truth of the matter, but that, of course, where there is nothing but mere memory, or parol evidence, such evidence should be very carefully and closely scrutinized. It would be a gross perversion of justice to exclude as incompetent parol evidence which might be overwhelming, as showing the error, merely because it is parol evidence. It is enough to say that, when the evidence is wholly by parol, it should receive the strictest scrutiny.

Applying these principles to the facts in this case, the judgment was properly corrected.            *Affirmed.*

PER CURIAM. The above opinion is adopted as the opinion of the court, and for the reasons therein indicated the judgment is affirmed.