ROBERTSON, State Revenue Agent, *v*. ÆTNA INS. CO.
*et al.*

[98 So. 833. No. 23720.]

(En Banc. Feb. 11, 1924.)

JUDGMENT. *Will interfere to prevent unfair advantage of judgment rendered by mutual mistake of fact.*

In all cases where, by accident, mistake, or fraud, a party has obtained an unfair and unconscionable advantage in a judgment rendered in his favor against his adversary, a court of equity will interfere and prevent such party from enjoying the fruits of such advantage, as, where such advantage is brought about by a mutual mistake of fact by the parties and the court entering the judgment, relief therefrom will be granted by a court of equity.

SMITH, C. J., and COOK and ETHRIDGE, JJ., dissenting.

APPEAL from chancery court of Hinds county.
HON. V. J. STRICKER, Chancellor.

Suit by the Aetna Insurance Company and others against Stokes V. Robertson, state revenue agent. From a decree for plaintiffs, defendant appeals. Affirmed and remanded as to certain plaintiffs.

*George Butler,* for appellant.

This is not an effort to correct the judgment or decree under section 1016, of the Code of 1906, because of a mistake, miscalculation or misrecital of any sum of money, quantity of anything, or of any name. Certainly it would seem that under the case of *Wilson* v. *Handsboro,* 99 Miss. 252, the case made by this proceeding is not within the terms of the statute.

As we understand it, counsel rely upon such cases as *Corry* v. *Buddendorff,* 98 Miss. 98; *Wilson* v. *Handsboro,* 99 Miss. 252; *Brown* v. *Wesson,* 114 Miss. 216; and *Huddleston* v. *Huddleston,* 95 So. 674, and undertake to present a case within one of the original heads of equity jurisdiction on account of a mistake of fact, as was presented particularly in the case of *Brown* v. *Wesson, supra.*

The allegations contained in this proceeding to correct the decrees do not meet the requirements laid down in *Brown* v. *Wesson, supra.* Therefore, the insurance companies are not entitled to relief on the showing made by their petition as to any of the companies. In the petition in this case it is alleged that the mistake grew out of the fact "that the discovery did not disclose . . . that petitioners, and each of them, carried re-insurance, that is to say, that they re-insured part of the risks written by them in the state of Mississippi with other fire insurance companies, defendant in said petition."

In other words, the petition to correct the decrees is predicated upon the act of the defendants in not making a proper discovery in response to the direct interrogatories propounded to them in the original tax proceeding.

There is no reason offered, or excuse given, why the defendants should have made this answer. Interrogatories had been propounded to them. They had answered these interrogatories under oath, and the decree adjudicated the exact amount of taxes due by each company. They show no diligence, and in reality, did not aver that their discovery was erroneous.

To summarize, we say: 1. This proceeding to correct these decrees is clearly not within the terms of section 1016, Code of 1906. 2. The alleged errors in the decree were not induced by the mistake of the officers of the court. 3. The error was purely an error of law and not one of fact. 4. The insurance companies have not shown or averred any sort of diligence, and, therefore, upon the plainest principles of equity are estopped to invoke the jurisdiction of this court to correct an error brought about by their own negligence and indifference.

*Watkins, Watkins & Eager,* and *R. L. McLaurin,* for appellees.

The legal principles underlying this case, from all the authorities, may, without controversy, be stated as follows: The rule is well settled that whenever a judgment or decree, through accident, mistake or fraud, is incorrectly entered, and is not the judgment or decree which would have been entered had not such accident, mistake or fraud intervened, then in such case a court of equity will afford relief and correct the judgment or decree. The power of a court of equity in such case does not arise from, nor is it restrained by section 736 of Hemingway's Code of the state of Mississippi, but is an independent ground of equity jurisdiction, and the power of the court of equity to give relief in such case is as complete as if the subject-matter for correction were a contract instead of a judgment. The rule is subject, however, to the modification that the mistake must be one of fact, and not of law.

The question was first presented in the case of *Webster* v. *Skipwith,* 26 Miss. 341, and was again presented in *Wilson* v. *Town of Handsboro,* 99 Miss. 252. This question was also treated in the following cases: *Brown* v. *Wesson,* 115 Miss. 216; *Huddleston* v. *Huddleston,* 95 So. 674, 132 Miss. ——.

From the case of *Brown* v. *Wesson, supra,* and other cases cited, it is made abundantly clear that the rule in-

voked in this case is not peculiar to Mississippi, but is the law everywhere. The rule recognizes the principle that there should be an end of litigation, and that a question once litigated should not be re-litigated, but, notwithstanding this rule, and the necessity for its observance, if a judgment, as entered, represents a mutual mistake of the parties, or of the court, the rendering of absolute justice is of greater importance than the adherence to any technical rule, and in recognition of this principle such decrees are invariably open to correction.

Counsel for appellant state that the demurrer to the petition should have been sustained because the petition was, as to a number of companies, in direct conflict with the original answer of certain appellees, filed in the intervention proceedings.

It is true that, by agreement of counsel, the original proceedings were made an exhibit to the petition, but the petition to correct the judgment did not ratify or adopt any of the statements contained in the original proceedings. Reference was made to them in order that the court might know exactly what steps were taken in the original proceedings. The right of action in this case was not founded on the exhibits. In other words, the exhibits did not form the basis of the action. This question was presented before this court in *Terry* v. *Jones,* 44 Miss. 540; *McKinney* v. *Adams,* 50 So. 574, not officially reported.

This case was tried upon appellants' demurrer to the defendants' petition to correct the judgment, all of the allegations of which were admitted on demurrer, and in no manner controlled or altered by any real or apparent conflict contained in the exhibits.

It must be borne in mind, too, that the petition did not deal with re-insurance carried with companies not defendant to the suit, because, as to any such re-insurance, the appellees were submitting themselves to liability. There would be no duplicate recovery in such

case, because, as to the re-insurance companies not par-
ties to the suit, no judgment was being entered against
them.   The error in this case, however, grew out of the
fact that, through accident and mistake, the attention of
the court was not directed to the fact that a duplicate re-
covery would result in the judgment entered.

It will be noted that counsel call attention to the fact
that there is a discrepancy in the re-insurance stated in
the original answer as to some of the appellees, and that
stated in the petition to correct the judgment.   And
counsel calls attention to the fact that the Aetna Insur-
ance Company, in its original discovery, stated that
it had total re-insurance of forty-three thousand two
hundred eighty dollars and twenty-three cents and, in
the petition to correct the judgment, it was stated that
that company had re-insurance of forty thousand eight
hundred sixty-four dollars and eighteen cents.   We might
direct the attention of the court to the fact that any
statement of re-insurance contained in the original an-
swer of the appellees was not responsive to any prayer
for discovery, and, as a matter of fact, was not discovery
at all, but was a mere voluntary statement made on be-
half of the company itself.   The state, in that case, was
not asking for discovery as to re-insurance, and was not
dealing with re-insurance.   The insurance companies were
not asking for a reduction on account of re-insurance.
The statement of re-insurance was, therefore, purely
voluntary and intended to accomplish no purpose what-
soever.

It will further be noted that variance in the statement
as to re-insurance would be expected if one statement
should include all re-insurance and the other statement
only re-insurance carried with certain companies de-
fendant to the suit, or if one included only a statement
of the re-insurance carried with strictly re-insurance com-
panies, and the other included the amounts carried with
the other companies defendant to the suit.

Counsel say, however, that the judgments should not be corrected because the original statement of gross premiums were furnished by appellees. The appellees did furnish a statement of gross premiums, but the state was only calling for a statement of the gross premiums which were taxable. The state was not calling for a duplication of recovery. And by mistake and error, the appellees filed statements which did not call to the attention of the court the fact that a portion of the premiums were for insurance ceded to other companies who were parties defendant to the suit. Suppose such had not been the case; suppose when they filed their answers this information had been given to the court. Confessedly, judgments as were taken would not have been taken. The allegations of the petition to correct the judgments are that the judgments were taken through error and mistake.

, ANDERSON, J., delivered the opinion of the court.

Appellees, insurance companies doing business in this state, filed their bill in the chancery court of Hinds county to correct the decree so far as it affected them entered in the case of *Stokes V. Robertson, Revenue Agent,* v. *Ætna Insurance Company et al.,* in said court, and to have entered the decree sought and intended by the parties to be entered in said cause. A decree was rendered sustaining the prayer of appellees' bill, from which appellant was granted an appeal to settle the principles of the cause.

The following case is presented: In February, 1921, the insurance commissioner through the attorney-general filed an intervention petition in the case of *Stokes V. Robertson, Revenue Agent,* v. *Ætna Insurance Company et al.,* pending in the chancery court of Hinds county. By this intervention petition the insurance commissioner sought to recover under the provisions of sections 2625

and 2607, Code of 1906 (sections 5090 and 5070, Hemingway's Code), from the insurance companies, defendants in that suit (among whom were appellees), the premium taxes due by them to the state for the last half of 1920, and sought to have the state's claim therefor made a prior lien on the funds in the hands of the receivers in said cause, and also sought a personal decree against the defendants. In order to ascertain the amount of premiums written by the defendants in that case during the period mentioned discovery was prayed for against them, asking that in their answers they discover the amount of insurance written during the period in question. The appellees filed their answers showing the gross premiums received by them during said period and the amount of premiums returned on account of cancellations, but failed to claim credit for reinsurance premiums.

In November, 1921, a personal decree with six per cent. interest thereon from the date of said decree, was taken against each of appellees for the amount of the gross premiums shown by their answers to have been written by them less cancellations, no deduction whatever being made on account of reinsurance. Thereafter it was ascertained by appellees that they had failed to discover in their answers and claim credit for premiums paid on account of reinsurance. Thereupon appellees filed their bill in said cause, which was the origin of the present case, to correct said decree so as to give appellees credit for premiums paid by insurance companies who had reinsured part of the appellee's business. Appellees charge in their bill that the state did not assert a claim in said cause against them or either of them for any amount other than the tax provided by said statute on the gross premiums written by them for the period in question, that by reason of mutual mistake of appellees and appellant a decree was rendered against appellees for an amount in excess of said tax, and that said mistake arose

by reason of the fact that the appellees had ceded a portion of the insurance written by them in the state to other insurance companies who were also parties defendant in said receivership, and that in said decree appellees were charged with the full amount of gross premiums written by them, and such other insurance companies were likewise charged with the full amount of gross premiums written by them, including reinsurance premiums, and therefore the result was as to such insurance to impose double liability for the same premium. In other words, the recovery as had in said cause for premium taxes against appellees and other companies therein sued overlapped on account of appellees through mistake in their answers failing to discover the amount of reinsurance premiums for which they were entitled to credit. The bill charged that the state in said cause did not assert any such liability against appellees and that appellees did not intend to confess such liability in their answers; that it was the purpose and intent of both the state and the defendants in said cause that the state recover alone what it was entitled to under the law, namely, premium taxes on the gross amount of premiums received by appellees less cancellations, and deduction for taxes paid on reinsurance of appellees' business by other companies; that except for such mistake the decree that was entered would not have been entered, but instead the decree now sought in this cause would have been entered.

The court below granted the prayer of appellees' bill and entered the decree that was intended to be entered in the said receivership cause. Appellant contends that the court was without authority to so decree; that although the decree that was entered in said receivership cause would not have been entered except for said mistake of appellees in making discovery in their answers in said cause, still appellees have had their day in court and there is no remedy at a subsequent term of the court to correct said mistake.

Where through accident, mistake, or fraud a judgment or decree is incorrectly entered and is not the judgment or decree which would have been entered had not such accident, mistake, or fraud intervened, then in such case a court of equity will afford relief and correct such judgment or decree. The power of a court of equity in such a case does not depend upon nor is it restrained by section 1016, Code of 1906 (section 736, Hemingway's Code), but is an independent ground of equity jurisdiction. The power of the court of equity in such cases to grant relief is complete. One of the original heads of equity jurisdiction is the power to correct judgments for fraud, accident, or mistake. The jurisdiction of equity in case of accident or mistake is as broad as its jurisdiction in cases of fraud. Where the parties to a cause and the court trying the cause, acting on the belief that a certain state of facts existed, entered a judgment based on such facts, but by reason of mistake as to facts such judgment would work a hardship to any of the parties, equity will give relief. *Webster* v. *Skipwith,* 26 Miss. 341; *Wilson* v. *Town of Handsboro,* 99 Miss. 252, 54 So. 845, Ann. Cas. 1913E, 345; *Brown* v. *Wesson,* 114 Miss. 216, 74 So. 831. In discussing a like question in *Webster* v. *Skipwith, supra,* the court quoted with approval the following from Story and Chief Justice Marshall:

" 'That in all cases where by accident, mistake, or fraud, or otherwise, a party has an unfair advantage in proceeding in a court of law, which must necessarily make that court an instrument of injustice, and it is, therefore, against conscience that he should use that advantage, a court of equity will interfere and restrain him from using the advantage.' 2 Story's Eq. Jur., section 885.

"Chief Justice Marshall thus states the rule: 'Any fact which proves it to be against conscience to execute such judgment, and of which the injured party could not have availed himself in a court of law, or of which he

might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence of himself or of his agents, will authorize a court of equity to interference.' *Marine Insurance Co.* v. *Hodgson,* 7 Cranch (U. S.) 332, 3 L. Ed. 362."

We have here a judgment entered admittedly on account of a misapprehension of the true facts by the parties to the cause and the court entering the judgment; a judgment not authorized by law and a judgment not sought by the complainant. Appellees in their answers undertook to discover the true amount, namely the gross premiums received by them during the period inquired about, less cancellations and deductions on account of reinsurance. In making discovery they overlooked claiming credit for reinsurance. Both parties were seeking the same facts. There was no misunderstanding between them. They both, misconceived the facts. There could be no controversy as to what the true amount was when the gross amount of premiums received had been shown with the deductions for cancellations and reinsurance. The parties simply intended to have one judgment entered and through mistake they had another and a different judgment entered. We think the case comes clearly within the principles laid down in the authorities cited.

Affirmed and remanded as to the following companies: London & Lancashire Insurance Company, Limited, Palatine Insurance Company of Great Britain, Urbaine Insurance Company, Providence-Washington Company, and Providence Underwriters' Agency Insurance Company.

*Affirmed and remanded.*

SMITH, C. J. (dissenting).

Three of us are of the opinion that the decree of the court below is erroneous and should be reversed; this cannot be done, however, unless a majority should concur therein; consequently, the decree must be affirmed.

In order to more clearly state the views of myself and the two of my Associates who concur therein, I will restate the case as made by the record. This cause does not arise on an original bill, but on a petition filed in the cause in which the decree sought to be reopened was rendered. As that was a cause in equity I presume that the power which the court below could here exercise is as broad as it would have been on an original bill. The relief here sought is not simply the correction of a former decree, but the setting aside of that decree and the granting to the petitioners of a new trial as will hereinafter be made to appear.

The record in the original cause was by agreement of counsel considered by the court below when passing on the demurrer to the petition for reopening the former decree and I can best state the case by beginning with the petition filed in the original proceeding.

While a suit by the state revenue agent was pending in the court below against a large number of fire insurance companies for the collection of penalties alleged to have been incurred by the companies because of violations of the state's anti-trust laws and in which a large sum of money belonging to the companies and in the hands of their local agents when the suit was begun was impounded and placed in the hands of three receivers, the state of Mississippi by its insurance commissioner and attorney-general intervened therein by a petition alleging an indebtedness to the state by the defendant companies for unpaid privilege taxes praying for a decree therefor, and that the money so due be paid out of the fund belonging to the companies then in court. Section 3 of that petition is as follows:

"Your intervener further shows that under chapter 69 of the Mississippi Code of 1906, and the amendments thereto, and particularly under section 2625 of said Code, each foreign fire insurance company transacting business in this state, as aforesaid, is required within the

first thirty days of January and July of each year to make under oath a full and correct statement of the amount of the gross receipts derived from the insurance business obtained from residents of the state or on property located therein during the preceding six months, and is required within the first fifteen days of February and August of each and every year, to pay to the commissioner the taxes elsewhere provided upon the amount of such receipts as returned, and by section 2629 of the Mississippi Code of 1906, as amended by section 31, chapter 104, Mississippi Laws of 1920, such said fire insurance companies are required to pay a tax within the time aforesaid of two and three-fourths per centum of gross earnings, less earned returned premiums, which said taxes are required to be collected by the insurance commissioner and paid into the state treasury, and which, with certain license taxes provided in said section 31, are in lieu of all other taxes to be assessed against or paid by such insurance companies.''

The petition then alleged that the companies had failed to report their earnings to the insurance commissioner and in section 8 thereof:

''That it is advised and believes, and from such information and belief avers, that it is entitled to have each of said defendants to discover to this court the amount of gross receipts derived from the business conducted by each in the state of Mississippi from July 1, 1920, to January 1, 1921, obtained from residents of this state, or on property located therein, and that when such sum has been discovered intervener is entitled to have and recover of and from the defendants respectively two and three-fourths per centum on such gross earnings, less earned returned premiums,'' etc.

In their answer to this petition the companies expressly admitted the allegations of the petition, and each for itself set forth specifically the amount of the gross premiums received by it, the amount of the premiums re-

turned, and most of them also the amount of reinsurance placed by them with authorized companies, though several of them did not report any such reinsurance. For instance, the discovery by the Fire & Marine Insurance Company of St. Paul is as follows:

"Gross premiums received in the state of Mississippi from July 1, 1920, to December 31, 1920, one hundred seventeen thousand six hundred fifty dollars and forty-six cents; returned premiums, twenty-one thousand four hundred eighty dollars and forty-eight cents; reinsurance with authorized companies, twelve thousand one hundred twenty-seven dollars and twelve cents."

The amount of the taxes due by this company was computed on ninety-six thousand one hundred sixty-nine dollars and ninety-eight cents, the difference between the gross and returned premiums reported by it, and a decree therefor was entered accordingly. The amount due by the other companies was arrived at in the same way.

It will be observed that the state's petition sought a decree for two and three-fourths per cent. on the gross premiums received by the companies less earned returned premiums to which the answer of the companies admitted the state was entitled, and in which answer there nowhere appears a claim for a further reduction from the gross premiums of the reinsurance premiums paid to authorized companies. Nearly two years after the rendition of this decree the petition, which forms the basis of the decree here appealed from, was filed alleging:

"That the said state of Mississippi did not claim or contend that petitioners were indebted to it or should pay to it any other, further or, additional sum than two and three-fourths per cent. on the gross premiums written, less cancellations." But "in the final decree entered against said petitioners herein, upon the 4th day of November, 1921, by mutual mistake, both on the part of the complainant and of these petitioners, defendants therein, and each of them, an excessive recovery was had

against petitioners, and each of them, and a judgment was taken against petitioners, and each of them, for an amount in excess of two and three-fourths per cent. of gross premiums, less cancellations. . . . That the mistake and error grew out of the fact that the discovery did not disclose, and in taking the final decree against these petitioners, it was overlooked and not taken into account, that petitioners, and each of them, carried reinsurance; that is to say, that they reinsured part of the risk written by them and each of them in the state of Mississippi with other fire insurance companies defendants in said petition of intervention, all of whom join herein, the effect of which was that a judgment was taken against each petitioner for the full amount of insurance premiums written by it in the state of Mississippi, less cancellations, and including that which it had reinsured with other companies defendant in said suit, and that a judgment was also taken against said reinsurance companies defendant in said suit for said premiums, thereby making an additional and excessive and erroneous recovery.''

That ''in entering and taking such judgment and decree, by error and mistake it was overlooked that a large portion of the reinsurance in authorized companies carried by petitioners herein was with companies defendant in said suit, against which reinsurance companies, as well as against said direct-writing companies, judgment was taken for said identical premiums. That such judgment and decree would not have been taken in the form and manner in which it was taken had it not been for the inadvertence, mistake and misunderstanding of the complainants and defendants, in failing to take into account the fact that the judgments against each of the petitioners herein duplicated the tax on that portion of the business which was reinsured, in the amounts and in the respects hereinbefore set out.''

An exhibit to this petition set forth the amount of reinsurance which each company claims to have placed with authorized companies, that were defendants in the original proceeding, and the prayer of the petition is:

That the former decree "be revoked, set aside and vacated, and that a new judgment or decree be rendered against the petitioners herein, fixing the true and correct liability of petitioners herein, in accordance with the actual liability of petitioners and each of them, under the actual facts in the case."

A demurrer to this petition by the state was overruled, and it declining to plead further, except as to five of the companies, a final decree was rendered in accordance with the prayer of the petition as to all of the companies except the five whose claim for credit on reinsurance premiums the state intends to contest.

The case was brought to this court by the state by an appeal from the final decree and by an appeal to settle the principles of the case from the interlocutory decree as to the five companies mentioned.

Section 2607, Code of 1906 (section 5070, Hemingway's Code), on which the appellees' claim for a credit for the reinsurance premiums paid by them to authorized companies is predicated, provides that:

"Reinsurance premiums paid to companies authorized to do business in Mississippi may be deducted from gross premiums in the semi-annual tax returns, when affidavits are furnished from such authorized reinsuring companies that the amounts so deducted are included in their own semi-annual tax returns, and are paid on by the authorized reinsuring company."

A judgment or decree will not be set aside even on timely application therefor in the court that rendered it and a new trial granted in order that a defense may be made thereto by the party complaining which he was prevented from making when it was rendered by fraud, accident, or mistake, unless his failure to make the de-

fense was unmixed with negligence on his part. "The slightest negligence will defeat the application, or occasion the imposition of the most vigorous terms as a condition of granting it." To cite authorities for this statement would be supererogatory, but if desired they will be found in 3 Miss. Digest, "New Trial," section 95 et seq. The rule governing courts of equity in setting aside judgments and decrees on an original bill therefor is practically the same. Authorities, *supra,* and also those cited in 2 Miss. Digest, "Judgment," section 428.

I presume that it will not be controverted that the power of a court of equity to grant relief against former decrees in equity is the same as its power to grant relief from judgments at law, and the rule is, without conflict in the authorities, that a court of equity will not set aside a judgment at law and grant a new trial in order that the defendant therein may interpose a defense thereto not made when the judgment was rendered, unless the defendant was without knowledge thereof when the judgment was rendered and could not have discovered it prior thereto by the exercise of reasonable diligence. 23 Cyc. 1010; 15 R. C. L. 754; *Miller* v. *Gaskin,* Smedes & M. Ch. 524; *Leggett* v. *Morris,* 6 Smedes & M. 723; *Lee* v. *Hooker,* 7 Smedes & M. 601; *Meek* v. *Howard,* 10 Smedes & M. 502; *Love* v. *Pass,* 14 Smedes & M. 158; *Porter* v. *Kilpatrick,* 24 Miss. 414; *Webster* v. *Skipwith,* 26 Miss. 341; *Hiller* v. *Cotton,* 48 Miss. 593; *Buckingham* v. *Wesson,* 54 Miss. 526; *Miller* v. *Palmer,* 55 Miss. 336.

In *Leggett* v. *Morris,* 6 Smedes & M. 723, the complainant sought to have a judgment at law set aside and a new trial granted in order that he might plead the want or failure of consideration for the note sued on. In affirming the decree of the lower court dismissing the bill this court, or rather its predecessor, the high court of error and appeals, said:

"The complainant was in court, contesting the suit, but never even raised this question as a defense; and his

excuse is, that he did not come to the knowledge of these facts until it was too late to use them on the trial. This showing is not sufficient. In the case of *Miller* v. *Gaskins,* S. & M. Ch. R. 524, Chancellor Buckner held a similar allegation to be insufficient. He said, 'It is not sufficient that the defendant did not know of the grounds of defence at the time of trial; it must appear that he could not have obtained such knowledge by the use of ordinary diligence.' ''

In *Buckingham* v. *Wesson,* 54 Miss. 526, Mrs. Buckingham, the administratrix of the estate of her deceased husband, sought by a cross-bill to have a judgment against the deceased on a note on which he was surety set aside in order that she might plead payment in part thereto. Her cross-bill alleged:

''That Cocke, the principal, had partly paid the Walker note on which her husband was surety, taking a receipt which he had in his lifetime, and which she has since the judgment found among old papers; that at the trial she did not know of this, but, had she then possessed the receipt, she could with it and other testimony have defeated a recovery.''

In affirming a decree sustaining a demurrer to this cross-bill this court said:

''The cross-bill presents no ground for relief of any sort. Its allegations as to the receipt showing a right to a credit on the note to Walker fall short of the well-settled rule of diligence required in such cases.''

In *Miller* v. *Palmer,* 55 Miss. 323, in answering the question, ''When will a court of equity relieve against a judgment at law?'' this court again said:

''A party will not be aided after trial at law unless he can impeach the justice of the verdict on grounds of which he could not have availed himself at law, or was prevented from doing so by fraud, accident, or the act of the opposite party, unmixed with negligence or fault on his part. . . .

"The jurisdiction rests on the ground, not merely that the defense was good, but that it was not known to the party at the trial, and that negligence and laches are not imputable to him. The settled doctrine in this state is that, if the defense could have been made at law (although a court of equity had concurrent jurisdiction), and was not made, the complainant must show two facts; first, that the defense is good and ought to have been successful; and, second, the failure to make it must be satisfactorily explained."

Turning now to the case at bar and examining the allegations of the petition in the light of these decisions it becomes manifest that no case for relief is made thereby. The petition does not allege that the petitioners did not know that they had reinsured a part of their risks, or that they did not know that the companies in which these risks were reinsured had also reported the premiums and would be taxed thereon. The allegation simply is:

"That the discovery did not disclose, and in taking the final decree against these petitioners, it was overlooked and not taken into account, that petitioners, and each of them, carried reinsurance."

And again that: "In entering and taking such judgment and decree, by error and mistake it was overlooked that a large portion of the reinsurance in authorized companies carried by petitioners herein was with companies defendant in said suit."

Consequently no case for relief is made by the petition. "To overlook is to pass over without notice, whether intentionally, or through carelessness or inadvertence." Webster's New International Dictionary.

The petitioners could not have been ignorant of the fact that they had reinsured a part of their risks; indeed the answers of most of them disclosed such reinsurance. And information that the reinsurance premiums were also reported by the reinsurance companies could have been ascertained by simply inquiring of those companies.

Moreover, the statute under which credit for reinsurance premiums is claimed expressly charges the companies claiming it with the duty of ascertaining from the companies with which the reinsurance was placed whether or not the tax thereon has been paid.

The petition alleges that the failure of the petitioners to obtain credit for the reinsurance premiums was caused "by mutual mistake both on the part of the complainant and of these petitioners, defendants therein," but it is manifest from the original petition and answer thereto that the complainant was in no way a party to the mistake. The petition on which the decree for the tax was rendered alleged that the insurance companies were due the state two and three-fourth per cent. on the gross premiums received by them, less unearned returned premiums, and prayed for a discovery and recovery accordingly. The reinsurance premiums were of no concern to the state, unless a claim to a credit therefor had been made by the companies under section 2607, Code of 1906 (section 5070, Hemingway's Code).

The cases cited in the opinion of my associates do not support the decree of the court below. In *Wilson* v. *Town of Handsboro,* 99 Miss. 252, 54 So. 845, Ann. Cas. 1913E, 345, no judgment or decree was set aside and a new trial granted. What there happened was that a circuit court had rendered a judgment sustaining a demurrer, which was erroneously entered on the minutes of the court as a judgment overruling the demurrer, and it was held that this judgment could be corrected at a subsequent term and the judgment which the court had actually rendered be entered. The case therefore is not here in point.

In *Webster* v. *Skipwith,* 26 Miss. 341, the court stated that the new trial there awarded came within the following statement of the rule therefor made by Chief Justice Marshall in *Marine Ins. Co.* v. *Hodgson,* 7 Cranch, 332, 3 L. Ed. 363:

"Any fact which proves it to be against conscience to execute such judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud, or accident, *unmixed with any fault or negligence of himself or his agents, will authorize a court of equity to interfere.*" (Italics mine.)

This case, therefore, instead of supporting the decree of the court below, is to the contrary.

*Brown* v. *Wesson,* 114 Miss. 216, 74 So. 831, was also not a case in which a former judgment or decree was set aside and a new trial granted. In that case an original bill was filed to correct an error in a decree in a partition proceeding. The commissioners appointed to make the partition intended to and reported to the court that they had set apart to each of the cotenants two hundred ten acres of land, and a decree was rendered confirming the partition as set forth in the commissioners' report. The bill for the correction of this decree alleged that in making the partition the commissioners and their surveyor erroneously described the boundaries of the various allotments resulting in inequalities in the division of the land and praying that the former decree be corrected so as to apportion the land as the commissioners intended. This court held that the decree should be corrected so as to conform to the intention of the commissioners in apportioning the land. It will be observed from the report of that case that it was manifest from the description of the lots into which the land was subdivided by the commissioners that their intention of allotting to each cotenant an equal number of acres had not been carried out and that the mistake which produced the inequality in the allotment was not brought about by any of the parties to the cause, but by the commissioners appointed by the court to make the allotment. It is therefore not here in point, for the complaint here is not that a mistake was made by an officer of the court and carried forward into the decree,

134 Miss.—27.

but that a defense to the decree was overlooked by the defendants thereto when the decree was rendered.

There must be an end to litigation, and the rule governing the setting aside of judgments and decrees and the awarding of new trial as hereinbefore set forth is one of the rules on which this court has heretofore uniformly acted in order to accomplish that purpose, and should be adhered to here.

There is another reason why the former decree should not be set aside. The prayer of the original petition herein that the taxes due the state by the companies be ordered paid out of the money in the hands of the receivers was not granted, simple judgments therefor only being rendered against the companies. Under section 2607, Code of 1906 (Hemingway's Code, section 5070), under which the credit for reinsurance premiums is claimed by the appellees, reinsurance premiums may be deducted from a company's gross premiums in computing the tax thereon only when the amounts so deducted are reported and "paid on by the authorized reinsuring company." In other words, the statute provides that reinsurance premiums may be deducted from gross receipts when the tax thereon has been paid by the reinsuring company and not when a judgment, which may or may not be paid, has been obtained by the state against the reinsuring company. On the original trial a reinsuring company may have had the right to object to a judgment being taken against it for the tax on a reinsurance premium that was included in the judgment against the company first receiving the premium, but the latter company would have had the right to a deduction therefor from its gross receipts only by making it appear that the tax thereon had been paid by the reinsurance company.

I am requested by Judges COOK and ETHRIDGE to say that they concur in the views herein expressed.