## James H. Webster et al. *v.* Grey Skipwith.

In all cases where, by accident, mistake, or fraud, or otherwise, a party has an unfair advantage in proceeding in a court of law, which must necessarily make that court an instrument of injustice, and it is therefore against conscience that he should use that advantage, a court of equity will interfere, and restrain him from using that advantage.

Any fact which proves it to be against conscience to execute such judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence of himself, or of his agents, will authorize a court of equity to interfere.

W. and W., not being a party to the original judgment at law, are not tied down by the strict legal rules affecting only the immediate parties; and they are entitled to have their rights protected against an undue advantage taken of their agent (W.), which must ultimately fall on them.

Whatever the measure of damages might be in the action at law for the breach of the condition of the bond, in a court of equity S. was entitled only to the actual damages sustained by him.

On appeal from the northern district chancery court at Hernando; Hon. Henry Dickinson, vice-chancellor.

Grey Skipwith, in the year 1838, purchased a tract of land from Henry Anderson, agent of the American Land Company, and he received Anderson's bond for title. Skipwith rented the land to J. H. and F. G. Webster, and afterwards sold it to W. M. Winn, as agent of the Websters. Skipwith had executed three notes for the purchase-money due on the land to the

American Land Company, one of which he paid, and the other two remained unpaid, and upon one of these a judgment had been obtained in Shelby county, Tennessee. By the terms of the agreement between Skipwith and Winn, agent of the Websters, he (Skipwith) was to transfer to Winn the bond for title executed by Anderson, and Webster should pay Skipwith $400 in cash, executing his note to Skipwith with security for the like sum of $400, and also execute his bond in the penalty of $10,000 to deliver to Skipwith the notes executed by him to Anderson for the land, which agreement was signed by Skipwith and Winn, and a bond to that effect executed in which he, Winn, covenanted in his own name by the bond, that Skipwith had sold the land to Winn, conditioned that Winn, J. H. and F. G. Webster should pay and deliver to Skipwith the notes he had executed to Anderson, " without let, hindrance, or costs of any.manner or kind whatever to said Skipwith." The bond was only signed by Winn, and on the 9th day of January, 1844, four days after the execution of. the bond to him by Webster, he, Skipwith, assigned to Webster Anderson's bond for title to the land, and on the next day Winn assigned the said bond to the Websters.

In November, 1847, Skipwith having sued on the bond executed to him, in the circuit court, obtained a judgment on it against Winn for a breach of its conditions, and the case having been taken to this court the judgment was affirmed. 14 S. & M. 14. A bill was then filed in the district chancery court at Hernando, by Webster and Winn, to enjoin the judgment at law in favor of Skipwith. The bill alleges that Winn in his transactions with Skipwith was but the agent of the Websters, and that fact was known to Skipwith at the time; and that the bond executed and left by agreement with one D., not to be delivered to either party without the consent of the other, that its conditions were fully complied with; but Skipwith, by falsely representing to D. that he wished to cancel the bond, got possession of it, and instituted his action at law. That Winn obtained proof of performance of the conditions of the bond, and so informed his counsel in the action at law, but they assured him it was unnecessary for him to introduce evi-

Webster et al. *v.* Skipwith.

dence, as the burden of proof was on Skipwith, wherefore his evidence was not produced at the trial. That Skipwith was not entitled to recover one cent; and frequently admitted before the trial that he was entitled to recover but a small sum, by which admission Winn was 'fraudulently lulled into security and prevented from employing other and more experienced counsel, and defending with such energy and zeal as he would have exerted had he known the amount of Skipwith's demand. That contrary to the opinion of Winn's counsel in the action at law, the burden of proof was thrown on Webster, and the proof not being produced, judgment was given against Winn for $5,000, no part of which judgment was just, and all of which, beyond the small amount which Skipwith had pretended to claim, was obtained by fraud. The bill prayed an injunction restraining the execution of the judgment till the final hearing, and that the judgment should be annulled.

Skipwith demurred to the bill, which was overruled. He then answered, denying all the material allegations of the bill, and especially denying all the alleged admissions, and all fraud whatever; and on final hearing, the injunction was dissolved, and the complainants prayed an appeal.

*F. Anderson* for appellants.

The court will grant a remedy against an unconscientious advantage obtained in suit at law. 1 S. & M. Ch. 525; 7 Cranch, 332; 4 Call, R. 285.

The defence at law was not full and adequate in behalf of the appellants. 1 U. S. Dig. 455, § 547; 16 Mis. R. 7; 7 Wend. R. 502; 17 Johns. R. 244; 8 Wend. 455–457; 8 Cow. 628; 11 Mass. R. 76; 1 Brown, Ch. Ca. 418; 2 Story, Eq. 543–551.

The court, having obtained jurisdiction for any purpose, will exercise it to restrain a judgment which it would be unconscientious to enforce. 3 Peters, 210.

*R. B. Mayes* for appellee.

A party seeking relief by injunction, after judgment at law, on facts which would constitute a legal defence, must show, first, that the facts existed; and secondly, that he was prevented from making such defence by one of four causes.

1. Ignorance of the facts pending the action, without fault or negligence in seeking information.

2. Unavoidable accident, unmixed with laches.

3. The fraud of the opposite party, unmixed with laches. If the fraud were in statements of the opposite party, it must consist·in either, first, the suggestion of falsehood; or, secondly, the suppression of truth.

4. That he was prevented by the act of the opposite party; [though the authorities would sustain me in omitting this cause, and insisting that such act must be fraud; and that even when fraud is alleged, relief will not be granted in opposition to a full and explicit denial in the answer. 7 How. 132; 1 S. & M. 608; 12 Ib. 436; 4 Georgia, 175.] 6 Porter, 24; 7 Ib. 549; 8 Ala. 112, 438; 13 Ib. 566; 17 Ib. 719; 10 S. & M. 98, 108, 502; 11 Ib. 141; 7 B. Monroe, 420; 2 Gilm. 332; 3 Ib. 626; 5 Blackf. 1; 6 Ib. 517; 8 Ib. 407; 2 Paige, 328; 1 Johns. Ch. 49, 51, 97, 98, 320, 432, 465, 510; 2 Ib. 351; 3 Ib. 351; 4 Ib. 110; 7 Ib. 87; 1 Bailey, Eq. 179; 2 Kelly, 275, 305; 3 Ib. 74, 226; 4 Georgia, 175; 7 Humph. 130; 7 Cranch, 332, 336, 337; 2 Cond. R. 518; 6 Johns. Ch. 89; 3 Atk. 223, 224; 2 Story, Eq. Jur. §§ 887, 895, 896; 1 Sch. & Lefr. 201, 204; 9 Johns. 90; 1 Johns. Ca. 436; 2 Munf. 31; 4 Rand. 19; 6 Ib. 125; 2 Leigh, 478; Mitf. Pl. 132; 1 Ch. Ca. 65; 2 Cox, 12; 1 Swanst. 204, 209; 2 Ib. 227, 231–233; 2 Atk. 319; 1 Vern. 176; 2 Ib. 325; 1 Y. & C. 271, 280; 3 Price, 231; 5 Paige, 249; 2 My. & ·Cr. 721, 732, 733; 3 Ib. 108; 5 How. 105; 4 S. & M. 358; 7 Ib. 181; 13 Ib. 698; 1 Cushm. 514; 2 Daniell, Ch. 1309; 1 Ves. jr. 133; 2 Ib. 519; 14 Ib. 31; Eq. Ca. Ab. 377.

Inadequacy of counsel, a mistake in pleading, or in the conduct of the action at law, or an omission of the defence, are no grounds for relief. 2 St. Eq. Jur. § 897; Eden on Inj. ch. 3, pp. 10, 11; 1 Johns. Ch. 49; 1 Eq. Ca. Ab. 377, pl. 1; Ib. 378, pl. 7; 2 Vern. 325; 2 My. & Cr. 108; 2 P. Wms. 70; 2 Swanst. 227, 231, 233; 1 Ib. 204; 1 Cox, 141; 2 Ib. 12; 2 Ves. 579; 2 Ves. jr. 519; 14 Ib. 31; 1 S. & L. 201; 5 How. 105; S. & M. Ch. 374; 4 S. & M. 358; 7 Ib. 181; 13 Ib. 698; 2 Gilm. 332; 3 Ib. 626; 7 Paige, 578; 7 B. Monr. 420; 2 Barb. Ch. 74; 2 Comst. 274; 6 Ired. Eq. 94; 7 Cranch, 332; 2 Cond. R. U. S.

518; 19 Verm. 496; 4 Johns. 510; English, 317; 1 Freem. 296.

Notwithstanding the failure or omission of the legal defence at law, relief will be granted if there be other grounds constituting an equitable discharge; but not if it were equally available at law.   S. & M. Ch. 374; 2 My. & K. 423; 7 Cranch, 69; 18 Johns. 403; 18 Pick. 95; 9 Wheat. 532; 17 Ala. 672; 2 Barb. S. C. 586; 1 Johns. 436; 1 Bailey, Eq. 107.

The mere fact that one is agent or surety, is no discharge in law or equity; but there must be other special circumstances growing out of the fact of agency or suretyship.   The surety is not, by proof of his being surety, exonerated from the duty of direct and immediate performance.   If an agent sign a bond in his own name as principal, he binds himself, and not the principal.   4 Ves. 160, 170; 1 Ves. jr. 173; 12 Ib. 352; 3 Bro. C. C. 201; 11 Mass. 29.   And waives his rights as agent or surety. 10 Peters, 257; 14 Ib. 201; 5 Taunt. 581; 9 S. & R. 229; 12 Ib. 382; 9 Cow. 484; 2 Barr, 416.

*G. P. Foute* on the same side.

The bill, on its face, shows that the demurrer should have been sustained, and the bill dismissed.   There is a clear want of equity in the bill.

The facts alleged show such gross negligence on the part of Winn on the trial at law, and such a fatal oversight on the part of his counsel on the subject of the pleadings, &c., that he is not entitled to relief.   The bill does not pray for a new trial on the ground of fraud, accident, or for any other cause; but makes the sweeping prayer that, upon the facts alleged, the judgment should be wholly annulled.   This would be beyond the jurisdiction of a court of equity in such cases.

I especially refer the court to the case between these same parties, 14 S. & M. 14, on the appeal from the judgment at law to this court.   That case shows there could be no equity in a bill filed to vacate the judgment.   That case settled all the rights of the parties.   Whether a bill to enjoin a judgment would lie after its affirmation by the high court, *Scroggins* v. *Howarth*, 1 Cushm. 514.   The answer denies all the allega-

tions of bill, and the proofs refute the bill and sustain the answer.

Mr. Justice HANDY delivered the opinion of the court.

This was a bill in chancery, filed to enjoin a judgment at law rendered in behalf of the appellee against William M. Winn, one of the appellants. The facts set forth in the pleadings and testimony are prolix and voluminous, and will only be noticed here in reference to the leading features of the case, touching the questions of law arising in it.

It appears that in January, 1844, Skipwith bargained and sold to Winn a tract of land which Skipwith had previously purchased from the American Land Company, Winn paying to Skipwith $400 in cash, and giving him his note for the further sum of $400, payable 1st January, 1845, and executing his bond to Skipwith in the penalty of $10,000, conditioned that Winn and J. H. and F. G. Webster should well and truly pay and deliver to Skipwith two notes given by Skipwith to the American Land Company, and then unpaid, without hinderance or costs of any kind to Skipwith. Winn was acting in the matter as agent for the Websters, though his own name alone was used. An action at law was instituted on this bond to May term, 1847, averring, as a breach of it, that the notes mentioned in the condition had not been paid; but the amount of them was not specified in the declaration, as it originally stood. To this, the defendant pleaded that he had well and truly paid the notes, according to the obligation; and thus the case stood at the trial term in November, 1847. Long before the institution of this suit, the Websters had really discharged and taken up the notes of Skipwith to the Land Company; and it appears that, at the trial term of the suit at law, Winn was in attendance and prepared with the proof necessary to a successful defence of it; but, on the assurance of his counsel, that, as the pleadings stood, the burden of proof was upon the plaintiff, and that his counsel had no proof to sustain the action, it would be decided for the defendant. Winn gave no further attention to the case, but left the court. The attorney for Skipwith was of opinion that he could not recover a final

judgment, for want of proof, and so stated to the adverse counsel, and proposed to him that the case should be continued, expressing a willingness to dismiss it upon the payment of costs and his fee, which was declined. He then determined to obtain an amendment of the declaration, so as to dispense with proof, and accordingly made such an amendment, acting, as he thought, under the consent of the attorney for the defendant. But in this, there seems to have been a misunderstanding between the attorneys; the one believing the consent to have been given, and the other not intending to give it, and being, as he states, ignorant of the fact that the amendment was made. Under these circumstances, the case proceeded to trial, the declaration as amended was read, and the defendant's original plea; and the defendant contended that the burden of proof was upon the plaintiff, and, there being no proof introduced to sustain the case, that a verdict should be rendered for the defendant. The court was of a different opinion, and judgment was rendered for the plaintiff for the full amount of the notes referred to in the condition of the bond, $5,000. A motion was made for a new trial, on the ground of the erroneous opinion of the court, which motion was overruled, and, on writ of error, the judgment was affirmed in this court, and the judgment for the entire amount of principal and interest, damages and costs, was attempted to be collected; while, if any thing was due Skipwith, it could only be a small sum for costs incurred in a suit against him brought before the purchase of the property from him by the Websters.

This bill is filed to enjoin this execution, alleging the above-stated facts in part, and charging fraud on Skipwith in prosecuting the suit, tendering the payment of whatever may be found to be justly due on the transactions, &c. &c. The bill was dismissed; and from that decree, the case is here by appeal.

A preliminary question is raised in behalf of the appellee, on the ground that the bill shows no cause for relief in equity, and that the demurrer in the court below should have been sustained, because the bill shows that there was an ample defence at law upon the state of facts set forth in it. But in addition to

the facts stated, showing that the suit might have been success-fully defended at law, the bill shows clearly that the complain-ants were lulled into security by the statements of Skipwith, " at the time of the institution of the suit and during its whole progress," in substance, that he only claimed about fifty or sixty dollars ; and the bill states that these repeated statements pre-vented Winn and his principals from making diligent defence to the suit. If this be true, (and the demurrer admits it,) there can be no question but that it affords a sufficient excuse for the failure to make the proper defence at law.

There can be no controversy in relation to the injustice of the judgment at law, or the unconscientious efforts of the plaintiff to take every advantage to be derived from it. The question is, whether the complainants show such a case as to bring them within the remediable powers of a court of equity ; and after a careful consideration of the case in all its circumstances, we are satisfied that sufficient ground is shown to entitle the com-plainants to relief in that court.

1. There is sufficient in the record to show that the judg-ment at law was obtained through mistake of fact.

It appears that the defendant in the suit either had in his possession, or was able to obtain readily, ample evidence to defeat the action, either entirely or for all but a very inconsider-able amount. From the condition of the pleadings and the statements of his counsel, founded possibly in misapprehension of fact, but still operating both upon the defendant and his counsel, in relation to the small amount which was claimed to be due, he concluded that there was no danger of a judgment being rendered against him. Nor could there have been any final judgment rendered at that term in the attitude of the pleadings at that time, and for the want of proof to sustain the plaintiff's case. But at this point it seems that a misappre-hension occurred between the counsel for both parties, in con-sequence of which, on the part of one of them, an amendment of the pleadings was made, which materially altered the state of the case, and enabled the plaintiff, in the absence of evidence on the part of the defendant, to obtain the judgment. Without imputing any impropriety to either of the counsel, it is clear

from their respective statements that there was a misunderstanding in relation to the amendment, and the counsel for the defendant states that he would not have gone to trial had he been aware of the amendment. It appears that the trial took place on the last day of the term, and though the amendment had been made for more than a week, it was unknown to the defendant's counsel. True, when apprised of it on the trial, he contended that it did not change the rule as to the burden of proof, and he took the same position on the motion for a new trial, and it was insisted on when the case was brought to this court. This was a mistake of law, but it did not destroy the effect of the mistake of 'fact which the misapprehension in relation to the amendment caused to the defendant's interest. It was the amendment which rendered the defendant's evidence necessary, as, without it and in the absence of proof, the plaintiff could not have succeeded; and it was ignorance of the fact that the amendment had been made which induced the counsel to go to trial, and deprived him of the benefit of his just defence. It is said that the defendant's counsel should have moved for a new trial, because of the surprise. It seems that he thought the decision of the court upon the case as of record was erroneous, and should be reversed. But if surprise would have been a good cause for new trial, it would with more propriety constitute ground of relief against an unconscientious claim in a court of equity; and the cases are numerous where the court of law will not grant a new trial in cases of this character; but courts of equity have given prompt relief.

In the application of the remedial powers of a court of equity to cases of this nature, they appear to have acted rather upon the intrinsic equity of the particular case, than upon any strict rule limiting and restraining the powers so as to prevent them from doing equity. Judge Story lays down the rule thus: " That in all cases where by accident, mistake, or fraud, or otherwise, a party has an unfair advantage in proceeding in a court of law, which must necessarily make that court an instrument of injustice, and it is, therefore, against conscience that he should use that advantage, a court of equity will interfere and restrain him from using the advantage." 2 Story's Eq. Jur.

§ 885. Chief Justice Marshall thus states the rule: "Any fact which proves it to be against conscience to execute such judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence of himself or of his agents, will authorize a court of equity to interfere." *Marine Insurance Co.* v. *Hodgson,* 7 Cranch, 332. These principles, we think, fully justify the interposition of a court of equity under the circumstances of this case.

2. The bill in this case is filed by the Websters, and for their relief. They were not parties to the judgment at law, nor affected by its technical effect and operation. But they are affected by it collaterally and in an equitable point of view; for as Winn was acting for them in all the transactions between him and Skipwith relative to the matters of this controversy, they would be bound to indemnify him in whatever loss he sustained on account of this judgment. They are the principals, and Winn the agent. If by force of this unconscientious judgment Skipwith were to coerce the amount of it from the agent, he would have his recourse upon his principals, the Websters. They, not being parties to the judgment, are not tied down by the strict legal rules affecting only the immediate parties, and are entitled to have their rights protected against an undue advantage taken of their agent which must ultimately fall on them. If the judgment were obtained by fraudulent means or unconscientious advantage against Winn, and he compelled to pay it, and then the Websters to refund the amount to him, they not being parties to the judgment, could recover of Skipwith the money thus fraudulently obtained by him. This is clearly deducible from the decisions in relation to this point. *Moses* v. *Macfarlan,* 2 Burr. 1605; 9 Mass. 14; 8 J. R. 470; 3 Harr. & J. 218; 9 Bing. 660; 6 B. & C. 679; 6 Cowen, 43. With much greater reason are they entitled to come into a court of equity and assert their just rights, by arresting the enforcement of a most unjust and unfounded demand before it is paid. This will prevent litigation, by having all the equities between the parties settled by one suit.

Webster et al. *v.* Skipwith.

We think, therefore, that if this judgment was inequitable as affecting the rights of the Websters, they should be heard in a court of equity to protect themselves against its iniquitous consequences.

3. Under the circumstances of this case, whatever the measure of damages might be in the action at law for the breach of the condition of the bond, it is well settled that in a court of equity, Skipwith was entitled only to the actual damages sustained by him.  If the notes had not been paid and delivered up to him, he was entitled, in the manner in which this case was presented on the trial at law, to recover damages to their full amount as stated in the declaration, and if their amount had not been stated, he might have had judgment for the full penalty of the bond, in default of a plea.  In either case, it would have been a judgment for a penalty, obtained through inadvertence, surprise, or accident, which courts of law would enforce.  But against such judgments courts of equity extend their relief, regarding the penalty or forfeiture, in equity, only as intended to secure the damages really incurred.  *Hardy* v. *Martin*, 1 Bro. Ch. R. in note; *Sanders* v. *Pope*, 12 Ves. 282; *Skinner* v. *Dayton*, 2 J. C. R. 535, 536; s. c., 17 J. R. 369; 2 Story, Eq. Jur. §§ 1315, 1320.  This judgment, therefore, though valid at law, is to be held in a court of equity only as a security for the damage actually sustained by the plaintiff in it, by reason of the failure of the defendant to pay and deliver up the notes referred to in the bond, and the costs incurred by Skipwith in consequence of such failure.

The decree below is reversed, and the cause remanded, with directions to have an account taken of the damage actually sustained by Skipwith, and the costs incurred by him before the institution of the suit at law; and to that amount that the judgment at law stand in full force; but for the residue, that it be perpetually injoined; and if no damages or costs, as aforesaid be ascertained to have been sustained or paid, then that said judgment be perpetually enjoined for the entire amount of it.