984 So.2d 343 (2007)
Billy Ray WALTON, Appellant
v.
Tamara J. (Walton) SNYDER, Appellee.
No. 2006-CA-01769-COA.
Court of Appeals of Mississippi.
December 4, 2007.
Rehearing Denied March 18, 2008.
*344 John A. Ferrell, Booneville, attorney for appellant.
J. Mark Shelton, attorney for appellee.
Before MYERS, P.J., BARNES and ROBERTS, JJ.
BARNES, J., for the Court.
¶ 1. Dr. Billy Ray Walton appeals the judgment of the Chancery Court of Lee County which increased the child support for his two children to the statutory guideline of twenty percent of his adjusted gross income. The chancellor also ordered the increase retroactive to the date of the filing of the petition to modify child support, thereby entering a judgment against Dr. Walton for $15,709.80. Lastly, the chancellor entered a judgment against Dr. Walton of $9,216 to rectify under-reporting of his gross income for the original adjudication of child support. We affirm the chancellor's judgment increasing child support to $2,647.32 per month and ordering the judgment retroactive from the date of the *345 petition to modify. However, we find the trial court erred in entering a judgment of $9,216 against Dr. Walton. Accordingly, we reverse and render solely as to that issue.

STATEMENT OF THE FACTS AND PROCEDURAL HISTORY
¶ 2. On March 18, 2002, a final judgment of divorce based on irreconcilable differences was granted in the Chancery Court of Lee County for Tamara Snyder[1] and Billy Ray Walton. Ms. Snyder, who had moved from Tupelo to Ridgeland, Mississippi, the year the couple separated in 1999, received sole physical custody of the couple's two children, Matthew and Jane Katherine. Both children have been enrolled at a private school, Madison Ridgeland Academy ("MRA"), since that time. In the final judgment of divorce, the chancery court awarded Ms. Snyder $1,600 per month for child support. The chancellor also awarded Ms. Snyder periodic alimony of $2,500 per month. The chancellor's order further specified that Dr. Walton must pay the private school tuition at MRA for both children until the end of the 2001-2002 school year. During the time of the divorce, Dr. Walton reported a gross annual income of $153,000. Since the divorce, Dr. Walton has remarried, while Ms. Snyder has not.
¶ 3. In September 2002, the chancellor entered an order amending the final judgment of divorce. The order adjudged Dr. Walton responsible for private school tuition for his son Matthew only, for the 2002-2003 academic year at MRA, unless Ms. Snyder obtained a full-time job and earned more than $2,000 per month. The order also explained that Dr. Walton was not obligated to pay private school tuition for Matthew after the 2002-2003 academic year, but he could if he so chose.[2] Ms. Snyder was ordered to pay Jane Katherine's private school tuition. Also, the parties were ordered to split an income tax refund for 2001 which amounted to $6,123 received by each party due to an error in the reporting of Dr. Walton's income to the IRS.
¶ 4. In November 2004, Ms. Snyder filed a complaint against Dr. Walton for contempt of court and for modification of the final judgment of divorce and for other relief. Ms. Snyder sought an increase in child support equal to or in excess of the statutory percentage of twenty percent of Dr. Walton's adjusted gross income because of an increase in the two children's expenses and an increase in Dr. Walton's income since the original divorce proceedings. At that time Matthew and Jane Katherine were fifteen and eleven years old, respectively. Ms. Snyder sought the increase to be retroactive from the date of the final judgment of divorce in March 2002. Among other issues, Ms. Snyder requested that Dr. Walton be responsible for the costs incurred in private schooling and college for both children. Further, Ms. Snyder alleged fraud upon the court by Dr. Walton in understating his 2001 income by nearly $30,000 during the divorce proceedings. Dr. Walton eventually rectified the error with the IRS and filed an amended income tax return, which Ms. Snyder signed, but he never amended his financial disclosures to the chancery court.
¶ 5. During a hearing in July 2005, the court heard testimony from both Dr. Walton and Ms. Snyder. Dr. Walton explained, regarding the misstatement of income on his 8.05 financial disclosure form for the year of the divorce, that the discrepancy *346 was because he was employed at different locations and his W-2 form from one of his employers was sent to a vacated address. He found out about the error when the IRS notified him of the discrepancy. His annual gross income at the time of the divorce was actually $181,000, not $153,000. For the current proceeding, Dr. Walton reported an annual gross income of $245,590 and a monthly adjusted gross income of $13,236.58. Ms. Snyder expected to earn an adjusted monthly gross income of approximately $1,754, as she had recently obtained a job as a mail carrier. On her financial disclosure form, Ms. Snyder also reported a monthly income of $4,100: $2,500 derived from alimony and $1,600 from child support.[3] Ms. Snyder reported total monthly expenses of approximately $6,400. Ms. Snyder testified that her parents help provide funding for private school education and unexpected expenses when she is short of funds.
¶ 6. On February 3, 2006, the chancellor issued a bench opinion which was later reduced to a written opinion and judgment. The court dismissed Ms. Snyder's contempt of court allegation against Dr. Walton with prejudice. The court increased Dr. Walton's child support to twenty percent of his adjusted gross income of $13,236.58, or $2,647.32 per month. In his opinion, the chancellor discussed numerous factors to justify this increase, including the increased needs of the children because of their ages, the increased expenses of the children, and Dr. Walton's increased earning capacity since the divorce. The chancellor also considered the issue of private school regarding these factors, and opined that since "the children attended private school during the marriage and at the time of the divorce . . . [they] should have the opportunity to continue their education in private schools."
¶ 7. Additionally, the court increased the child support retroactive to the date of the filing of the petition to modify. The court, therefore, awarded Ms. Snyder a judgment in the amount of $15,709.80, which equals the difference between the amount of child support Dr. Walton was paying under the previous court order and the increase in child support, multiplied by the fifteen months from November 2004 until February 2006.
¶ 8. Finally, the court addressed the fraud alleged by Ms. Snyder for Dr. Walton's misstatement of income during the original divorce proceeding. The court explained that while it was "hard to believe, as has been argued by [Dr. Walton], that his representation of his income was an honest mistake. . . . it does find that it was a mistake and that it went to the detriment of the children involved in this case." Therefore, the chancellor rendered a judgment against Dr. Walton of $9,216. This amount represents the deficiency in Dr. Walton's child support payments of approximately $288 per month for the thirty-two month period, from March 2002 to November 2004[4], since Dr. Walton's gross income was actually eighteen percent more than he had represented to the court at the time of the divorce.
¶ 9. Subsequently, Dr. Walton filed a motion to alter or amend the judgment, which was denied. Dr. Walton then perfected his appeal, raising two issues: whether the trial court committed reversible error in (1) increasing the amount of *347 child support that Dr. Walton was to pay Ms. Snyder and ordering that increase retroactive from the time the petition to modify was filed, and (2) increasing the original child support amount retroactive to the time of the divorce because of Dr. Walton's mistake in reporting his income.

STANDARD OF REVIEW
¶ 10. Our standard of review in domestic matters is limited. A chancellor's decision, when supported by substantial evidence, will not be reversed on appeal unless the chancellor "abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Kilpatrick v. Kilpatrick, 732 So.2d 876, 880(¶ 13) (Miss.1999) (citing Herring Gas Co. v. Whiddon, 616 So.2d 892, 894 (Miss.1993)). Further, chancellors are given broad discretion in the area of modification of child support. Morris v. Stacy, 641 So.2d 1194, 1196 (Miss.1994). "[A]rriving at an award of child support is essentially an exercise in fact-finding," which restricts our Court's review considerably. Clausel v. Clausel, 714 So.2d 265, 266-67(¶ 6) (Miss.1998) (quoting Gillespie v. Gillespie, 594 So.2d 620, 622 (Miss.1992)). For questions of law, the standard of review is de novo. Id. (citing Harrison Co. v. City of Gulfport, 557 So.2d 780, 784 (Miss.1990)).

ANALYSIS
I. Whether the trial court erred in increasing Dr. Walton's child support.[5]
¶ 11. Dr. Walton argues that the decision of the chancellor was improperly based upon the children's attending private school and its attendant costs. He claims this factor cannot constitute a material change. Dr. Walton states there is no other specific proof in the record of increased expenses for the children besides private school expenses. Also, he maintains his increased income was foreseeable at the time of the divorce and, thus, cannot be considered a material change. Finally, Dr. Walton argues Ms. Snyder's own income increase was not properly considered by the court.
¶ 12. The authority of chancery courts to modify final divorce decrees regarding child support is granted by statute and by the inherent authority of the chancery court itself. Miss.Code Ann. § 93-5-23 (Supp.2006); McEachern v. McEachern, 605 So.2d 809, 813 (Miss.1992) (citing Campbell v. Campbell, 357 So.2d 129, 130 (Miss.1978)). While the best interest of the child will always serve as the touchstone for determining modification of child support, in order to obtain modification, the party seeking the change must prove there has been a substantial and material change in the circumstances of one of the interested parties arising after the original divorce decree. Overstreet v. Overstreet, 692 So.2d 88, 92 (Miss.1997) (citing Caldwell v. Caldwell, 579 So.2d 543, 547 (Miss. 1991); Tedford v. Dempsey, 437 So.2d 410, 417 (Miss.1983)). Changes in circumstances "reasonably foreseeable" at the time of the divorce, however, may not be considered as a material change by the chancellor. Wallace v. Bond, 745 So.2d 844, 849(¶ 23) (Miss.1999) (citing Morris v. Morris, 541 So.2d 1040, 1042 (Miss.1989)).
¶ 13. The Mississippi Supreme Court has found that the expenses of private school are a legitimate factor to consider in modification proceedings, although the expenses are inadequate standing alone. Southerland v. Southerland, 816 *348 So.2d 1004, 1007(¶ 13) (Miss.2002). Educational expenses may be properly considered with the increased needs of older children and their increased extracurricular activities in order to justify an increase in child support. Havens v. Broocks, 728 So.2d 580, 583(¶ 9) (Miss.Ct.App.1998). Contrary to Dr. Walton's assertion that the chancellor based his decision predominately on the added expense of private school, the chancellor expressly considered and discussed all ten factors supporting modification as explained in Adams v. Adams, 467 So.2d 211, 215 (Miss.1985). These factors include: (1) increased needs caused by advanced age and maturity of the children, (2) increase in expenses, (3) inflation factor, (4) the relative financial condition and earning capacity of the parties, (5) the physical and psychological health and special medical needs of the child, (6) the health and special medical needs of the parents, both physical and psychological, (7) the necessary living expenses of the father, (8) the estimated amount of income taxes that the respective parties must pay on their incomes, (9) the free use of residence, furnishings, and automobiles, and (10) any other factors and circumstances that bear on the support as shown by the evidence. Id. (citing Brabham v. Brabham, 226 Miss. 165, 176, 84 So.2d 147, 153 (1955)).
¶ 14. The chancellor took into account the ages of the children, who at the time of the judgment were sixteen and thirteen years old, and their increased expenses, including that of private school, but also Matthew's need for a vehicle and its associated expenses. Further noted by the court was that both children were developing interests in extracurricular activities, which Ms. Snyder testified she could not afford. The increased earning capacity of Dr. Walton was taken into account, as was Ms. Snyder's recent income increase. For the final catch-all factor, the court noted that Dr. Walton "underestimated, either intentionally or inadvertently, his income at the time of the divorce." We find, considering these various factors, the chancellor did not err in finding a material change of circumstance.
¶ 15. We understand the crux of Dr. Walton's argument regarding the expenses of private school for his two children to be that the expenses were reasonably foreseeable at the time of the entry of divorce and, in fact, a reality, thus this factor could not be a material change. It is true that the children began attending MRA in the fall of 1999 and have continued to attend, while the final judgment of divorce was entered in March 2002. However, this argument is not persuasive. The court's judgment explained MRA's tuition is $450 per month for one child, while private school in Tupelo had cost the married couple only $350 per child per month, thus there was an increased expense. We find that this specific finding, standing alone, could not be considered an increase in expense for modification of child support since this expense existed before the entry of divorce. However, the chancellor stressed that the private school expenses were but one of several factors he considered. He noted the importance of the children's continuing to attend private school as they had been accustomed and where they were doing well. We agree that the ongoing private school tuition expenses for the two children, included within the consideration of the increased needs of the children due to being in their teenage years and participating in increased extracurricular activities, were all factors properly considered changes in circumstance warranting child support modification.
¶ 16. Upon review of the record, we find the chancellor's findings are sufficiently supported by the evidence to warrant *349 the modification. Ms. Snyder testified as to her income and her children's increased expenses because of their increased ages, as well as an explanation of her income and expenses on her 8.05 financial disclosure form. She testified Dr. Walton did not voluntarily provide any further monetary support beyond his court-ordered child support. Often, her parents were called upon to pay for the children's expenses when she could not afford them. Additionally, the court noted that Dr. Walton's "relative financial condition and earning capacity far outweighs that of Tammy." Ms. Snyder's monthly adjusted gross income, excluding alimony and child support, was reported at $1,753.65, and Dr. Walton's monthly adjusted gross income was approximately $13,236.58. Consequently, we find no merit to Dr. Walton's argument that the court did not consider Ms. Snyder's own income. Further, as the chancellor noted, Dr. Walton's annual adjusted gross income increased sixty percent from the time of the entry of divorce. He was only paying twelve percent of this increased income, much less than the twenty percent recommended in the statutory guidelines. The court also properly made a specific written finding that the application of the statutory guideline of twenty percent of Dr. Walton's adjusted gross income for two children was reasonable since Dr. Walton's annual adjusted gross income exceeds $50,000, pursuant to Mississippi Code Annotated section 43-19-101(4) (Rev.2004). Dr. Walton counters that his income increase was foreseeable as Ms. Snyder testified she knew at the time of divorce he would move from Jackson back to Tupelo and make more money. But, this argument is not well taken, as there is no evidence in the record, other than the above statement, that Ms. Snyder knew Dr. Walton's income would rapidly increase to such an extent. Furthermore, Dr. Walton's increased income is just one of several factors the court considered in its decision.
¶ 17. Accordingly, we find the chancellor did not abuse his discretion in finding a material change in circumstance, thereby increasing Dr. Walton's child support to the statutory guideline of twenty percent of his adjusted gross income. This issue is without merit.
II. Whether the trial court erred in applying the increase in Dr. Walton's child support retroactively from the date of the filing of the petition to modify.
¶ 18. Dr. Walton argues that the chancellor improperly increased the child support retroactively, commencing in November 2004, when Ms. Snyder filed her petition to modify. In Lawrence v. Lawrence, 574 So.2d 1376 (Miss.1991), the Mississippi Supreme Court articulated the rule that modifications increasing child support shall be allowed as of the date of the petition to modify or later, at the discretion of the trial court, to prevent delay tactics or inappropriate self-help measures by the parties. Id. at 1384. In our case the chancellor entered a judgment against Dr. Walton of $15,709.80, which represents the difference in the amount of child support that Dr. Walton was formerly paying, and the increase multiplied by fifteen months. We find this judgment within the trial court's discretion. This issue is without merit.
III. Whether the trial court erred in increasing Dr. Walton's original child support retroactively from the date of the divorce judgment in order to rectify a mistake in the amount of income Dr. Walton reported.
¶ 19. Dr. Walton claims that this retroactive increase in child support was *350 error. We agree. The court surmised that if Dr. Walton had correctly reported his income, his original child support payments would have been $1,888 per month instead of $1,600 per month. The chancellor entered a judgment against Dr. Walton of $9,216, which equates to $288 per month (the amount Dr. Walton was deficient in child support payments due to under-reporting his annual income by approximately $28,000) multiplied by thirty-two months. While the chancellor stated that he found it hard to believe the mistake was honest, the chancellor did not make a finding of fraud. The chancery court discussed two cases involving fraud and Mississippi Rule of Civil Procedure 60(b) before applying an older equitable precept.
¶ 20. First, the chancery court cites Pulliam v. Smith, 872 So.2d 790 (Miss.Ct. App.2004) which held that the issue of fraud is generally raised in a Rule 60(b) motion. Id. at 794(¶ 7) (citing Askew v. Askew, 699 So.2d 515, 519(¶ 17) (Miss. 1997)). Next, the court cites Tirouda v. State, 919 So.2d 211 (Miss.Ct.App.2005), in support of the authority given to a court "to make amendments to a prior judgment when its prior judgment was obtained by fraud upon the court." The chancery court also notes that in Warner's Griffith, Mississippi Chancery Practice (Rev.2d 1991), courts of equity are given as broad a jurisdiction in cases of mistake as fraud to correct judgments where a judgment was based on mistaken facts. Finally, Webster v. Skipwith, 26 Miss. 341 (Miss.1853) is cited for the proposition that chancery courts are given the power to correct judgments where mistake or fraud has caused hardship or given an unfair advantage to the parties. Id. at 349-50. The chancellor explained that the hardship the children endured was the divestment of the child support that they were entitled to receive from the time of the divorce, in the amount of $9,216, had their father not under-reported his income.
¶ 21. We find the trial court erred. Mississippi Rule of Civil Procedure 60(b) provides, in pertinent part, that the court, upon a motion or its own power, may relieve a party from final judgment for "(1) fraud, misrepresentation, or other misconduct of an adverse party; (2) accident or mistake; (3) newly discovered evidence . . . [or] (6) any other reason justifying relief from the judgment." Motions under subsections (1), (2) and (3) must, however, be brought within "six months after the judgment, order, or proceeding was entered or taken." Motions made under subsection (6) must be made within a "reasonable time." The rule "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court." M.R.C.P. 60(b). As Ms. Snyder did not file her motion within six months of the March 2002 judgment, she cannot rely upon any grounds found in subsections (1), (2) or (3).
¶ 22. We find the trial court's citation to Tirouda and the Griffith treatise misplaced, because, as Tirouda explains, the requirements of Rule 60(b) must nonetheless be met in order for the court to take corrective action. Tirouda dealt with a chancery court, on its own Rule 60(b) motion, finding fraud upon the court relating to a judgment it had issued granting a delayed birth certificate to an immigrant. The immigrant and two other witnesses had knowingly falsified information provided to the court in order to claim birth in Mississippi. The Tirouda court discussed the difference found in Rule 60(b) between fraud upon an individual, falling under Rule 60(b)(1), which requires a motion for relief from judgment be filed within a reasonable time but not more than six months after the judgment, and fraud upon the court, falling under the savings clause of Rule 60(b), which is not subject to such *351 time constraints. Id. at 214-15(¶ 8). In Tirouda, it was determined that fraud upon the court was committed by numerous witnesses in a deliberate scheme to influence the court, thus the judgment could be set aside by the chancery court, within a reasonable time, and did not fall within the Rule 60(b) six-month time constraints. In contrast, the perjured testimony of merely one witness, as Tirouda discussed, would not trigger relief for fraud upon the court. Id. at 216(¶ 12).
¶ 23. In our case, the court did not find Dr. Walton's misstatements fraudulent, but rather a mistake. Even if Dr. Walton's misstatement of income would have been found fraudulent, it would have been fraud upon an adverse party, falling within the Rule 60(b)(1) six-month time constraint, because Dr. Walton would have been the sole witness committing perjury. However, it is irrelevant whether the trial court found Dr. Walton's statements fraudulent or not, because, as Tirouda explains, the only way to escape the six-month time constraints of Rule 60(b) is for there to be a finding of fraud upon the court, such as where several witnesses perjure themselves. Id. at 216(¶ 12). This was not the case here. Therefore, under Rule 60(b), Ms. Snyder had six months from the date of judgment of March 2002, to file a motion for relief. The record indicates that Ms. Snyder, although aware of the mistake because she had to sign the amended tax returns, did not take any action on the misstatement until she filed her petition to modify child support in November 2004.
¶ 24. Mrs. Snyder cites to Rule 60(b)(6) to justify this award. However, in its opinion, the court does not specifically justify its relief under the catch-all provision of Rule 60(b)(6), which has been described as a "grand reservoir of equitable power to do justice in a particular case." M.A.S. v. Miss. Dep't of Human Servs., 842 So.2d 527, 530(¶ 12) (Miss.2003) (quoting Briney v. U.S. Fid. & Guar. Co., 714 So.2d 962, 966 (Miss.1998)). Relief under this rule "is reserved for exceptional and compelling circumstances" only. Hartford Underwriters Ins. Co. v. Williams, 936 So.2d 888, 893(¶ 14) (Miss.2006) (quoting Sartain v. White, 588 So.2d 204, 212 (Miss.1991)). However, relief under Rule 60(b)(6) cannot be based upon a reason which may be found under the first five subsections of the rule. Mitchell v. Nelson, 830 So.2d 635, 639(¶ 9) (Miss.2002).
¶ 25. As for application of equitable relief under Skipworth, we find this authority inapplicable as well. Its propositions were formulated long before the adoption of the Mississippi Rules of Civil Procedure, and while the Skipworth doctrine may still be utilized, its use must comply with the rules of civil procedure unless the case is specifically not within the rules. Consequently, we find the court abused its discretion by revising the original divorce decree to increase the original child support retroactively when the motion was not made within the time limits set by Rule 60(b). Therefore, we find the judgment against Dr. Walton of $9,216 in error. Accordingly, we reverse and render as to this issue.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED AS TO ISSUES I AND II, AND REVERSED AND RENDERED AS TO ISSUE III. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Tamara restored her maiden name.
[2] Dr. Walton later testified that he did not pay for private school for the 2003-2004 and 2004-2005 school years for either child.
[3] This figure is minus $461.54, which is the amount of the monthly salary Ms. Snyder reported from a job she had held as a part-time customer service representative, which she left for her postal carrier job.
[4] This period represents the time from the date of the entry of divorce to the date of the filing of the petition to modify child support.
[5] While Dr. Walton only raises two issues, combining the increase in child support with its retroactive application, we will discuss these matters as separate issues for clarity.